*D'Angelo Wright v. State of Maryland*, No. 733, September Term, 2019, Opinion by Raker, J.

**CRIMINAL LAW – FLIGHT OR SURRENDER**

**CRIMINAL LAW – FLIGHT OR REFUSAL TO FLEE**

When the sole issue at trial is the identity of the criminal actor, a trial court may give a pattern jury instruction on flight provided that it does not imply that the identity issue is settled.

Circuit Court for Baltimore City
Case No. 117144002

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 733

September Term, 2019
_____

D'ANGELO WRIGHT

v.

STATE OF MARYLAND
_____

Kehoe,
Beachley,
Raker, Irma S.
(Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Raker, J.
_____

Filed: July 31, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Appellant D'Angelo Wright was convicted in the Circuit Court for Baltimore City of attempted first-degree murder, use of a firearm in a crime of violence, and wear, carry, and transport of a handgun. Appellant presents the following questions for our review:

> "1. Did the trial court abuse its discretion by allowing Detective Greenfield to identify Mr. Wright in photographs and surveillance footage even though he was not substantially familiar with Mr. Wright?
>
> 2. Did the trial court err in giving a flight instruction where the sole contested issue was the identity of the person who committed the crime and fled the scene?
>
> 3. Did the trial court commit plain error by allowing the prosecutor to improperly argue highly prejudicial facts that were not in evidence during closing argument?"

Finding no error, we shall affirm.


I.

Appellant was indicted by the Grand Jury for Baltimore City for attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, reckless endangerment, use of a firearm in a crime of violence, wear, carry, and transport of a handgun, and discharge of a firearm within city limits. A jury convicted him of attempted first-degree murder, use of a firearm in a crime of violence, and wear, carry, and transport of a handgun. The court sentenced him to a term of incarceration of forty years, suspended all but twenty-five years, and three years probation for attempted first-

degree murder and a consecutive term of fifteen years, the first five years without parole, for use of a firearm in a crime of violence.[1]

The following facts were presented at trial. On April 11, 2017, Eric Tate, III was playing a game of dice with some people. The surveillance video from a nearby Dollar Shop showed an altercation between Mr. Tate and a man in a red hat, whom he claimed was appellant, over a dispute about the game. The man lost his hat during the altercation and ran away. The video showed two men approach Mr. Tate, one of whom shot him. Mr. Tate testified initially that he did not know the identity of the assailant because he was shot from behind, but later testified that it was appellant. The video showed the assailant flee after the shooting. Police did not recover a weapon, gun residue, or fingerprints from the scene.

Prior to trial, defense counsel moved *in limine* to exclude the testimony of Detective Eric Greenfield. Detective Greenfield had identified appellant as the suspect in the shooting after recognizing appellant's face in the still images attached to an "attempt to identify" (BOLO) email circulated by Detective Andre Parker. The State wanted Detective Greenfield to testify because of concerns with Mr. Tate's credibility.[2] Defense counsel argued that Detective Greenfield was not a witness to the crime and was not familiar enough with appellant to identify him.

---

[1] For sentencing purposes, the court merged the conviction for wear, carry, and transport of a handgun with the conviction for use of a firearm in a crime of violence.

[2] The court found that Mr. Tate was feigning memory loss for certain details surrounding the shooting. Based on this finding, the court allowed the State to play Detective Parker's videotaped interview with Mr. Tate.

In response, the State noted that Detective Greenfield worked as an intelligence officer in the Office of the Chief Patrol for almost two years and tracked gang activity in appellant's neighborhood. He knew appellant from social media posts, including photos, that he tracked as part of his job and from two in-person interactions with appellant lasting "anywhere from 30 seconds to 5 minutes" in the first half of 2016. The State argued that Detective Greenfield was sufficiently familiar with appellant's appearance to offer his identification as a lay witness and that it was up to the jury to decide what weight to give to the identification. The court denied appellant's motion *in limine*, explaining as follows:

> "The Court is satisfied that Mr. Greenfield's knowledge of [appellant] is not just based on one interaction but in fact he does have the kind of knowledge that [Md.] Rule 5-701 was created for.
>
> In *Moreland v. State*[, 207 Md. App. 563, 53 A.3d 449 (2012)], the Court of Special Appeals indicates that . . . Rule 5-701 . . . allow[s] lay witnesses to testify to things such as the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of terms that can not be described factually in words apart from other inferences. That's precisely what Mr. Greenfield is able to assist the jury with.
>
> *. . . [W]hat the Court will allow . . . Mr. Greenfield to testify to is that [appellant] is the person in the video. . . . He won't be able to say that[] [appellant is] the person that did the shooting but he can say that's the person on the video.*"

During Detective Greenfield's testimony at trial, the State sought to admit a still photo of a man in a red hat, which was taken from the surveillance video footage of a restaurant near the Dollar Shop about one hour before the shooting and used in the BOLO poster that Detective Greenfield responded to. Defense counsel objected as follows:

3

"[THE STATE]: I'm going to show you what's been marked as State's Exhibit No. 22.

\*\*\*

Take a moment and review that. Are you familiar with what's been marked as State's Exhibit No. 22?

[DETECTIVE GREENFIELD]: Yes, ma'am.

[THE STATE]: And what is that?

[DEFENSE COUNSEL]: Your Honor, we would object to this. I'm just asking the Court to note our prior objection in the motions hearing in regards to this issue. Just put it in there for the record."

A bench conference ensued as follows:

"THE COURT: What is it? I don't know what she's showing him?

[DEFENSE COUNSEL]: The still photograph that was presented at the motions hearing.

THE COURT: . . . All right, your objection is noted for the record."

The court admitted the photo into evidence, and defense counsel did not object to Detective Greenfield's testimony that the man in the photo was appellant.

The State subsequently sought to admit the surveillance video as a separate exhibit, and defense counsel objected as follows:

"[THE STATE]: Your Honor, at this time the State would submit into evidence State's Exhibit 23, a certified copy of the surveillance video footage from [the restaurant].

THE COURT: Any objection?

4

[DEFENSE COUNSEL]: Just the objection from before.  But other than that, no objection."

The court noted the objection and admitted the video.  After the jury saw the video, Detective Greenfield identified the man in the red hat in the video as appellant and testified that he was "certain."  He also testified that at the time of his pre-trial identification of appellant based on the BOLO poster, he was ninety-nine percent certain.  Defense counsel did not object to any part of Detective Greenfield's testimony.[3]

During a discussion on jury instructions, defense counsel objected to the State's proposed instruction on flight of a defendant on the grounds that it implied improperly that *appellant* was the person who ran from the scene.  The court denied the objection, ruling as follows:

> "The Court believes that there was sufficient evidence generated by the State and should the jury believe the testimony of the detective who identified [appellant] as the person whom he viewed in the Facebook post and . . . in the video and should the jury believe the testimony of Mr. Tate, who also identified [appellant] as the person that shot him, that there is enough evidence with respect to both of those witnesses' testimony for the jury to believe [appellant] is the person in the video who was running from the scene next."

Using the Maryland Pattern Criminal Jury Instruction ("MPJI-Cr") 3:24, the court instructed the jury on flight of a defendant as follows:

> "Flight or concealment of *a defendant*.  *A person's* flight immediately after the commission of a crime or after being accused of committing a crime is not enough by itself to establish guilt, but it is a fact that may be considered by you as

---

[3] In addition, defense counsel did not object to Detective Parker's subsequent testimony confirming Detective Greenfield's pre-trial identifications of appellant from the BOLO poster and the video.

evidence of guilt. Flight under these circumstances may be motivated by a variety of factors, some of which are fully consistent with innocence. You must first decide whether there is evidence of flight. If you decide there is evidence of flight you then must decide whether this flight shows a consciousness of guilt."

Shortly afterwards, the court instructed the jury, "The burden is on the State to prove beyond a reasonable doubt that the offense was committed *and that the Defendant was the person who committed it*." After the court gave these instructions, defense counsel renewed her objection.

During closing arguments, the State characterized Detective Greenfield's identification of appellant as follows:

> "If it weren't for the work of the detectives in this case this could easily be an unsolved attempted murder but they immediately identified and were able to recover the relevant surveillance footage . . . [Detective Parker] put together the attempt to identify flyer and when he sent it out to individuals who might be familiar with the area through the normal police department process[,] Detective Greenfield, who had a deep familiarity with the area, individuals associated with the area and organizations associated with the area through his role as an intel officer . . . *identified the person in the surveillance footage that shot the victim as [appellant]*."

Defense counsel did not object to this statement.

Appellant was convicted and sentenced as above, and this timely appeal followed.

## II.

Before this Court, appellant presents three arguments for our consideration. First, he argues that the trial court erred in allowing Detective Greenfield to identify the man in

6

the restaurant surveillance video as appellant because Detective Greenfield did not have enough personal familiarity with appellant to offer lay opinion testimony as to appellant's identity. Because Detective Greenfield's testimony was "paramount" to the State's case by linking appellant to the shooting, appellant contends that admitting this evidence was not harmless.

Second, appellant argues that the court erred in instructing the jury on flight, maintaining that it is error to so instruct where the assailant and the person who fled were indisputably the same person and where the only issue was that person's identity. Citing California and Massachusetts cases, appellant essentially asks this Court to hold that it is *per se* improper for a trial court to instruct on flight of a defendant when the only issue in the case is the identity of the person who committed the crime. At trial, appellant's defense was that he was not the person who shot Mr. Tate. He maintains that the flight instruction was improper and prejudicial because the sole issue was the identity of the assailant and the instruction—which referred to "flight or concealment of a defendant"—implied necessarily that appellant was the assailant. He concludes that there was no evidence that appellant was the person who fled the scene and hence that by giving the instruction, the court implied that appellant was the one who ran from the scene and was the assailant. In sum, he concludes that the flight evidence was irrelevant to the jury's determination of identity, improper, and misleading.

Third, appellant argues that the State's closing arguments contained facts not in evidence and warrant plain error review. Appellant maintains that the State asserted that Detective Greenfield identified appellant as the assailant. In appellant's view, this

7

contradicts directly the scope of Detective Greenfield's testimony established by the trial court, which was that he could testify only that appellant was the person in the restaurant surveillance video, not that he was the assailant. Appellant argues that the State's characterization of Detective Greenfield's testimony was highly prejudicial and warrants review by this Court even though appellant did not object. Appellant concedes, as he must, that no objection was made at trial but maintains that the error is plain error, warranting this Court's consideration.

In response, the State argues first that appellant did not preserve his claim that Detective Greenfield was not familiar enough with appellant to identify him. The State maintains that defense counsel objected only to the admission of the photo and the restaurant surveillance video showing the man in the red hat, not to Detective Greenfield's identification of the man in the red hat as appellant. The State argues further that, if the claim is preserved, the trial court did not err in admitting the testimony because Detective Greenfield's familiarity with appellant through social media accounts and brief in-person interactions was enough for him to offer lay opinion testimony as to appellant's identity.

Second, the State argues that the court did not err in instructing the jury on flight and that the instruction was proper. The State maintains that the instruction in this case—which did not reference "the defendant"—gives no reason to believe that the jurors would have thought that the trial court was telling them that appellant was the person fleeing. Instead, the State argues, it is more reasonable to infer that the jurors used their common sense and understood this instruction to mean that *if* the person fleeing was appellant, then they could consider flight as evidence of guilt. The State maintains that it presented

8

sufficient evidence to suggest that appellant was the assailant who fled the scene after shooting Mr. Tate. The State argues that the wording of the instruction—"*a* defendant" instead of "*the* defendant"—did not imply that appellant was the assailant and that the instruction did not direct the jury to infer appellant's guilt. In addition, at oral argument, the State argued that appellant did not concede at trial that the only issue was identification and that the flight instruction and consciousness of guilt inference went to the state of mind of appellant. The State maintained that appellant might have suggested a self-defense argument or hot-blooded response argument and that flight was indeed relevant.

As to the closing argument, the State argues that any issue was not preserved and does not warrant plain error review. The State acknowledges that its statement about Detective Greenfield's testimony could be ambiguous because it did not specify that Detective Greenfield identified appellant as the man in the restaurant video and not as the assailant in the Dollar Shop video. The State maintains that the statement was meant to tie Detective Greenfield's identification to the identity of the assailant and at most violated "the spirit" of the trial court's ruling on appellant's motion *in limine* regarding that testimony. The State argues, however, that the error is not egregious enough to warrant plain error review and is not preserved for review because defense counsel failed to object.

### III.

We begin with appellant's first and third issues and hold that appellant failed to preserve the identity and closing argument issues for our review. As to the first issue concerning identity, defense counsel failed to object specifically to Detective Greenfield's

9

testimony regarding the identity of the man in the photo and surveillance video. Md. Rule 4-323 requires that a party object to the admission of evidence at the time the evidence is offered; otherwise, the objection is waived. *See Hyman v. State*, 4 Md. App. 636, 642, 244 A.2d 616, 619 (1968) ("[T]o preserve an issue on appeal in regard to the admissibility of evidence, there must be an objection made to the question eliciting the allegedly objectionable answer[.]").

The general rule in Maryland is that even though a party files a motion *in limine* and the court denies that motion, a contemporaneous objection is nonetheless required to preserve that claim for appeal. *See Klauenberg v. State*, 355 Md. 528, 539, 735 A.2d 1061, 1067 (1999) (holding that "when a motion *in limine* to exclude evidence is denied, the issue of admissibility of the evidence that was the subject of the motion is not preserved for appellate review unless a contemporaneous objection is made at the time the evidence is later introduced at trial"); *Wise v. State*, 243 Md. App. 257, 275, 220 A.3d 341, 352 (2019). The exception to the general rule for a contemporaneous objection is when it is apparent that any further ruling would be unfavorable, *i.e.*, an objection would be futile. *See Johnson v. State*, 325 Md. 511, 515, 601 A.2d 1093, 1094 (1992).

At trial, appellant objected to the admission of the still photo and the surveillance video during Detective Greenfield's testimony but not to his testimony identifying appellant from these exhibits. Without such contemporaneous objection and without any indication that an objection would have been futile, appellant has not preserved his appellate claim to Detective Greenfield's identification testimony.

As to the issue of closing argument, appellant concedes that he did not object and

10

asks for plain error review. Although this Court has discretion to review unpreserved errors pursuant to Md. Rule 8-131(a), appellate courts exercise that discretion rarely because fairness and judicial efficiency require ordinarily that all challenges to a trial court's ruling should be presented first to the trial court. *Ray v. State*, 435 Md. 1, 23, 76 A.3d 1143, 1155 (2013). Plain error is "error which vitally affects a defendant's right to a fair and impartial trial." *State v. Daughton*, 321 Md. 206, 211, 582 A.2d 521, 523 (1990). Plain error review is reserved for those errors that are "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *State v. Hutchinson*, 287 Md. 198, 203, 411 A.2d 1035, 1038 (1980). An appellate court's "exercise of discretion to engage in plain error review is 'rare.'" *Yates v. State*, 429 Md. 112, 131, 55 A.3d 25, 36 (2012); *see* Md. Rule 8-131(a). As Maryland courts have oft-iterated, granting plain error review "1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon." *Morris v. State*, 153 Md. App. 480, 507, 837 A.2d 248, 264 (2003).

There is no reason for us to exercise our discretion because the trial court's failure to *sua sponte* interject itself into the prosecutor's closing argument was not a "compelling, extraordinary, exceptional or fundamental" error and did not deprive appellant of a fair trial. Certainly, any alleged error was not clear and obvious. In short, we are not persuaded that plain error review is warranted in this case. We have refused to invoke plain error even where counsel makes a claim unsubstantiated by the evidence in closing arguments. *See Rubin v. State*, 325 Md. 552, 587–89, 602 A.2d 677, 694–95 (1992) (holding that the State's "unobjected-to, improper" closing argument that included an unsupported claim that the defendant tried to poison somebody—a crime for which she was not on trial—did

11

not deprive the defendant of a fair trial because of "overwhelming proof of guilt" and thus did not warrant plain error review). Even if the State's argument was inaccurate, the trial court cured this problem by instructing the jury correctly that closing arguments are not evidence.

We turn to the instruction on flight. Md. Rule 4-325(c) provides that a trial court "may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." The Rule requires the trial court to give a requested instruction when "(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197–98, 946 A.2d 444, 450 (2008). We review a trial court's decision to give a particular jury instruction for abuse of discretion. *Smith v. State*, 403 Md. 659, 663, 944 A.2d 505, 507 (2008). We will not reverse unless we determine that the instruction was "ambiguous, misleading or confusing" or otherwise does not "fairly cover[]" the applicable law. *Id.*

We hold that the court did not abuse its discretion or err in instructing the jury on flight. Maryland courts have upheld consistently the propriety of a flight instruction and have approved the MPJI-Cr on flight, the exact instruction the trial court used in this case. *See, e.g.*, *Thompson v. State*, 393 Md. 291, 901 A.2d 208 (2006) (and cases cited therein). And no Maryland court has held that where identity is the sole issue in the case, a flight instruction is improper or prejudicial.[4]

---

[4] It may well be that identity was not the *sole* issue in the case. Then, even in Massachusetts the instruction would have been proper.

12

Writing for the Court of Appeals, Judge Lynne Battaglia in *Thompson* examined cases related to the propriety of a flight instruction in our sister states and categorically rejected a *per se* exclusion of the instruction. Electing to remain within the majority view nationally, the Court explained as follows:

> "We have consistently held that although '[f]light by itself is not sufficient to establish the guilt of the defendant,' it 'is a factor that may be considered in determining guilt.' Moreover, we have noted that flight may be indicative of a consciousness of guilt by the defendant. Concomitantly, we have recognized that a defendant's flight may be motivated by reasons unconnected to the offense at issue in the case and that the determination as to the motivation for flight is properly entrusted to the jury. Thus, based on the foregoing cases, the instruction is substantively accurate with respect to the law of the State of Maryland on flight. We have consistently upheld the propriety of flight instructions."

*Id.* at 303–04, 901 A.2d at 215 (citations omitted). Although the particular issue of identity as the sole issue in the case was not before the *Thompson* court, the Court's reasoning is applicable. *Thompson* does not stand for the proposition that a flight instruction, when identity is the sole issue, is categorically impermissible; if the Court thought that to be the case, it could have said so, and it did not.

Appellant relies primarily on California and Massachusetts cases. In *Commonwealth v. Bastaldo*, 32 N.E.3d 873, 888 (Mass. 2015), the Supreme Judicial Court of Massachusetts summarized the issue of instructing a jury on flight of a defendant where identity is at issue as follows:

> "An instruction on consciousness of guilt is appropriate where the jury may draw an inference of guilt from evidence of flight, concealment, or similar acts . . . A defendant's flight is often considered classic evidence of consciousness of guilt. The

inference of guilt may be drawn in part from the premise that a person flees because he feels guilt concerning that act and the person feels guilt concerning the act because he committed that act.

In contrast, *a consciousness of guilt instruction regarding flight is generally inappropriate where there is no dispute that the crime was committed by the person fleeing from the crime scene, and the only contested issue is the identification of the defendant as the fleeing offender*. Under these circumstances, if the jury finds that it was the defendant who fled, the jury will find him guilty, not because flight evidences consciousness of guilt but because flight reveals the defendant to be the assailant. In these circumstances, a consciousness of guilt instruction would provide no relevant guidance to the jury but would *pose the risk that the jury might think the judge was suggesting that the defendant was the person who fled and therefore the person who committed the crime*."

(Emphasis added) (internal citations and quotation marks omitted). In an earlier case, the Appeals Court of Massachusetts observed that where "[t]here was no issue at trial . . . whether the incident had actually occurred or whether what had occurred was a crime, . . . [t]he instruction, . . . given the posture of the case, was inapposite." *Commonwealth v. Groce*, 517 N.E.2d 1297, 1300 (Mass. App. Ct. 1988). The court in *Groce* expressed concern with the trial court's use of the phrase "the defendant's conduct" and concluded that the trial court, despite efforts to the contrary, could have led the jury to believe that the defendant was the person who fled the scene of the crime. *Id.* at 1300 n.1. In contrast, in *Bastaldo*, 32 N.E.3d at 889–90, the court held that the trial court erred in giving the consciousness-of-guilt instruction but that the error was not prejudicial because (1) there was evidence independent of the defendant's identity that linked him to the crime and (2) the trial court instructed the jury in a way that made it clear that the court was not deciding

14

the issue of identity. The Supreme Judicial Court of Massachusetts reached a similar conclusion in *Commonwealth v. Pina*, 717 N.E.2d 1005, 1011 (Mass. 1999), stating that "[i]t would have been best had the judge not given the consciousness of guilt charge," but unlike in *Groce*, the court found any error harmless because the trial court "took additional steps to stress to the jury that . . . [it] was not commenting on the evidence or implying that the defendant was the shooter."

The propriety of a flight instruction in relation to identity issues has been raised in over one hundred cases in California—some approved for publication and others not so. The bottom line, as set out by the Supreme Court of California in *People v. Avila*, 208 P.3d 634, 662 (Cal. 2009), is that "a flight instruction does not create an unconstitutional permissive inference *or lessen the prosecutor's burden of proof, and is proper even when identity is at issue.*" (Emphasis added). *See also People v. Mason*, 802 P.2d 950 (Cal. 1991).

In *Thomas v. State*, 372 Md. 342, 352, 812 A.2d 1050, 1056 (2002), the Court of Appeals adopted a four-part inference test that must be satisfied before a trial court may instruct on flight:

> "[Inferences] (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."

In his brief, appellant contends that "the evidence did not satisfy the first necessary inference, which requires that the conduct of the *defendant* indicated flight." To satisfy that *Thomas* factor, the State need only produce some evidence that the criminal actor fled.

The State satisfied that factor by producing evidence that the criminal actor—the shooter—fled the scene. No Maryland court has held that a flight instruction is *per se* inappropriate when the sole issue at trial is the identity of the criminal actor. We will not do so here. It is not the law in Maryland that a flight instruction is categorically impermissible when identity is the sole issue at trial. We are not persuaded to adopt the approach of Massachusetts.

The trial court, using MPJI-Cr 3:24, stated correctly the law regarding flight and consciousness of guilt. The instruction, which referred to flight of "*a defendant*" and not "the defendant," did not imply to the jury that the court believed that appellant was the assailant. Unlike in *Groce*, 517 N.E.2d at 1300 n.1, the court avoided telling the jury that the issue of identity was settled. As the State argues, it is reasonable to infer that the jury was aware of one of the most fundamental distinctions in the English language—between "a" person or thing and "the" person or thing. We agree with the State that if the jury had concluded that appellant was *not* the person in the surveillance video, it would not have then concluded that he must be guilty because *someone* fled the scene.

In addition, immediately following the instruction, the court reminded the jury that the State had the ultimate burden of proving that appellant was the assailant. The court instructed the jury that the burden was on the State to prove that "the offense was committed and the Defendant was the person who committed it." The court also told the jury that it was not required to draw an inference of guilt; the court said that "[a] person's flight immediately after the commission of a crime . . . is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt." The court further

16

instructed the jury not to draw any conclusions "about my views of the case." Viewing the instructions as a whole and the evidence in the case, we hold that the trial court did not err in instructing the jury on flight.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

17

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0733s19cn.pdf