*D'Angelo Wright v. State of Maryland*, No. 40, September Term, 2020.
Opinion by Biran, J.


**CRIMINAL LAW – JURY INSTRUCTION ON FLIGHT OR CONCEALMENT –**
The Court of Appeals held that, in general, it is error for a trial court to instruct the jury on
"flight or concealment" per Maryland Criminal Pattern Jury Instruction 3:24 where the
defense does not contest that whoever fled the scene is guilty of the charged offense, and
instead contends only that the State failed to prove that the defendant was the fleeing
offender. However, defense counsel must expressly and unambiguously state – prior to the
jury charge – that the defense solely contests the identity of the defendant as the fleeing
offender.

**CRIMINAL LAW – JURY INSTRUCTION ON FLIGHT OR CONCEALMENT –
REVIEW FOR ABUSE OF DISCRETION –** The Court held that the trial court did not
abuse its discretion in giving the flight instruction in this case. Petitioner's trial counsel did
not timely, expressly, and unambiguously state that the defense solely contested
Petitioner's identity as the fleeing offender. Even if the evidence of Petitioner's flight had
also been the only evidence upon which the State relied to prove that Petitioner committed
the offense, the trial court would have had discretion to give the flight instruction. The trial
judge's reference to "Flight or Concealment of a Defendant" as the heading of the
instruction did not improperly suggest to the jury that the trial judge believed Petitioner
was the person who fled.

Circuit Court for Baltimore City
Case No. 117144002
Argued: April 12, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 40

September Term, 2020

D'ANGELO WRIGHT

v.

STATE OF MARYLAND

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Biran, J.

Filed: July 13, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

A Maryland criminal pattern jury instruction concerning flight or concealment after the commission of a crime tells the jury, among other things, that a person's flight or concealment "immediately after the commission of a crime, or after being accused of committing a crime, is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt." Maryland State Bar Ass'n, *Maryland Criminal Pattern Jury Instructions*, 3:24 (2d ed. 2018). The instruction goes on to explain that, if the jury finds there is evidence of flight or concealment, the jury then must decide whether such flight or concealment "shows a consciousness of guilt." *Id.*

A common scenario in which this instruction is given occurs where the State has introduced evidence that: (1) someone committed a crime; and (2) the defendant on trial took some action after the crime that may constitute "flight." In such a case, while the defendant typically disputes that they committed the crime, the defendant does not dispute that they left the scene of the crime. Rather, the defendant in this situation typically will argue that their conduct did not constitute "flight" or that, if it did, the defendant's flight nevertheless does not show consciousness of guilt of the charged offenses.

The appeal before us here is a different kind of "flight" case. It is undisputed that, on April 11, 2017, someone shot Eric Tate, III, and immediately fled the scene. Petitioner D'Angelo Wright was subsequently charged with attempted first-degree murder and other offenses in connection with Tate's shooting. At trial, Wright disputed *both* that he was the shooter and that he was the person who fled the scene. Over Wright's objection, the trial judge provided the jury with the pattern instruction on flight. The jury convicted Wright of attempted first-degree murder and related charges. The Court of Special Appeals affirmed

Wright's convictions, holding that the trial court did not err in giving the flight instruction. Wright then sought further review in this Court.

We conclude that a trial judge generally should not give the flight instruction where the sole contested issue at trial is the defendant's identity as the fleeing offender. In such a case, the defendant is conceding that the State has proven all the elements necessary to show that the assailant – whoever it was – is guilty of the charged offenses. Whether the assailant demonstrated consciousness of guilt is irrelevant to the jury's determination in such a case. All the jury must decide is whether the defendant was the fleeing assailant.

In this case, however, defense counsel did not make clear to the trial judge prior to the jury charge that the sole contested issue was Wright's identity as the fleeing offender. Because the evidence adduced at trial generated the flight instruction, and because Wright did not make the necessary unequivocal statement to the trial court narrowing the case solely to Wright's identity as the fleeing assailant, the trial court did not abuse its discretion in giving the flight instruction.

# I

## Background

### A. The Shooting

On April 11, 2017, Eric Tate and several others were playing a game of dice in an alley in the 4400 block of Park Heights Avenue in Baltimore City, adjacent to the Dollar Shop V & Outlet (the "Dollar Shop"). Video footage from a camera affixed to the Dollar Shop (the "Dollar Shop Video") showed that the following occurred at approximately 5:30 p.m.:

2

- Several men emerged from the alley. One of the men was Tate. Another was a man wearing gray sneakers, a black shirt with an indiscernible symbol or logo on the left side of the chest and indiscernible writing on the back, and a red baseball-type cap with the bill of the cap facing backwards at an angle.

- Tate argued with the man in the red cap, and then punched him. The cap fell off the man's head as the man received Tate's punch.

- Soon afterwards, the man who had been wearing the red cap left the scene in a car without the red cap. Tate then walked down the sidewalk away from the Dollar Shop camera but still visible to the camera.

- Approximately one minute after the man who had argued with Tate left in the car, two men approached Tate on foot, one of whom chased Tate into Park Heights Avenue and shot him at close range. The shooter wore gray sneakers and a black shirt with an indiscernible symbol or logo on the left side of the chest and indiscernible writing on the back.

- The shooter immediately ran away after shooting Tate.

After police responded to a call that shots had been fired, they found Tate lying in the middle of Park Heights Avenue, critically injured as a result of bullet wounds to the head and leg. Tate survived the shooting.

In the alley adjacent to the Dollar Shop, police recovered two dice. The dice did not contain any latent fingerprints, and police did not recover any other physical evidence at the scene (such as a gun) that could help identify the shooter. Police collected and viewed the Dollar Shop Video. Although the altercation between Tate and the man in the red cap,

3

Tate's shooting, and the shooter's flight were all shown in the Dollar Shop Video, the faces of the men in the video were indiscernible.

In addition to the Dollar Shop Video footage, police obtained video footage taken approximately 45 minutes before Tate's shooting by cameras located inside and outside Miami Chicken (the "Miami Chicken Video"), at 2700 West Cold Spring Lane, which is around the corner from the Dollar Shop. The Miami Chicken Video showed a man in the store wearing gray sneakers, a black shirt with a horseshoe-shaped logo on the left side of the chest along with writing on the back that said, "True Religion Brand Jeans® World Tour Fashion for the Senses," and a red baseball-type cap with the bill facing backwards at an angle similar to the angle of the cap worn by the man who argued with Tate. Police believed that the man shown in the Miami Chicken Video and Tate's shooter were the same person.

On April 12, 2017, Detective Eric Greenfield saw still photos taken from the Miami Chicken Video that were included in a flyer circulated throughout the Baltimore Police Department asking for assistance in identifying the man pictured in the black shirt and red cap. Detective Greenfield believed that the man shown in the images taken from the Miami Chicken Video was Wright. He had become familiar with Wright prior to April 12, 2017, through at least two in-person interactions with Wright and through monitoring him on social media, specifically Facebook and Twitter. Detective Greenfield knew Wright as "Lo" or "Cruddy Lo." Wright's Twitter handle was "@4300LL," which Detective Greenfield believed referenced the 4300 block of Park Heights Avenue. Wright's Facebook account was in the name of "ABMLo." Detective Greenfield knew "ABM" to be short for

4

"All About Money," a group that was associated with the area that included the block where Tate's shooting occurred.

On May 24, 2017, a grand jury in Baltimore City returned an indictment charging Wright with attempted first-degree murder, use of a firearm in a crime of violence, and related offenses in connection with Tate's shooting.

After he was discharged from the hospital, Tate was interviewed by Baltimore Police Detective Andre Parker. When Detective Parker showed Tate various still photos taken from the Dollar Shop Video, Tate identified himself in the photos and also identified the man in the black shirt and red cap as "Lo." Tate told Detective Parker that they were playing a game of dice and that he and Lo had gotten into an argument.

## B. Trial

Wright's trial began on December 17, 2018. In his opening statement, defense counsel alluded to the Dollar Shop Video that the jurors would see in the State's case, telling the jurors that "the video just shows a small portion of what's going on" and that "there's a lot more to this case." Noting that "there were several independent witnesses at the scene" who are visible on the video, defense counsel continued: "The police, with all their resources, have none of them here to tell you who the shooter was and the circumstances around the shooting."

In the State's case-in-chief, Tate testified that he got into a fight with "Lo" prior to being shot. Tate said he could not recall what started the fight or whether "Lo" accused him of cheating during the dice game. When asked about his interview with Detective Parker, Tate initially testified that he did not remember speaking with the detective. Later,

Tate said he remembered talking with Detective Parker, but could not recall the substance of the conversation. The trial court found that Tate was feigning memory loss of some of the details concerning the shooting, and allowed the State to play a videotaped recording of Detective Parker's interview of Tate, in which Tate identified the man in the Dollar Shop Video with the black shirt and red cap as "Lo." After watching the videotape of his interview with Detective Parker, Tate testified that he recalled telling Detective Parker that Lo said he was going to get his gun. Tate also identified Wright in the courtroom as Lo.

On cross-examination, defense counsel asked Tate more questions about the fight that occurred prior to the shooting:

Q: Do you remember being involved in a physical altercation before you were shot?
A: Can you repeat that?
Q: Do you remember being involved in a physical altercation, like a fight, before you were shot?
A: Yeah.
Q: Do you remember that or is that just because you were shown it on the video at some point?
A: No, I know that.
Q: Okay, and who were you involved in a fight with?
A: I was in a fight with Lo.
Q: Okay. And what happened in that fight?
A: I don't remember.
Q: Okay. Do you remember punching anyone?
A: I don't know.
Q: You used to be a boxer, is that correct?
A: Yeah.
Q: Have you been involved in physical altercations before?

The trial court sustained the State's objection to defense counsel's question whether Tate had been involved in prior physical altercations.

6

Tate further testified on cross-examination that the shooter approached him from behind and that he did not see who shot him. However, when defense counsel asked Tate if he remembered who shot him, Tate answered, "It was Lo."

The State introduced and played the Dollar Shop Video and the Miami Chicken Video for the jury. Detective Greenfield identified Wright as the man wearing the black shirt and red cap in the Miami Chicken Video, and he also made an in-court identification of Wright. Detective Greenfield testified that he knew Wright as "Lo," or "Cruddy Lo," and explained that he had become familiar with Wright through at least two in-person interactions and through his regular monitoring of the @4300LL Twitter account and the ABMLo Facebook account.

After the State concluded its presentation of evidence, the trial court discussed its proposed jury instructions with the parties. Pertinent to this appeal, the trial court proposed to give an instruction on "flight or concealment of a defendant." The text of the trial court's proposed instruction quoted verbatim the Maryland pattern jury instruction:

> A person's flight immediately after the commission of a crime or after being accused of committing a crime is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt. Flight under these circumstances may be motivated by a variety of factors, some of which are fully consistent with innocence. You must first decide whether there is evidence of flight. If you decide there is evidence of flight you then must decide whether this flight shows a consciousness of guilt.[1]

Defense counsel objected to the court giving the flight instruction, arguing that the instruction improperly implied "that [Wright] was the one that ran and that's the whole

---

[1] Because the evidence at trial showed flight, rather than concealment, the trial court omitted alternative references to concealment in the pattern instruction.

7

crux of the case was that Mr. Wright did the shooting." The trial court overruled the objection:

> The Court believes that there was sufficient evidence generated by the State and should the jury believe the testimony of the detective who identified the Defendant as the person whom he viewed in the Facebook post and was able to identify as the person in the video and should the jury believe the testimony of Mr. Tate, who also identified the Defendant as the person that shot him, that there is enough evidence with respect to both of those witnesses' testimony for the jury to believe the Defendant is the person in the video who was running from the scene[.]

After the trial court completed its instruction of the jury, which included the pattern instruction on flight as set forth above, defense counsel renewed his objection on that point. The trial court again overruled the objection.

In her closing argument, the prosecutor addressed not only the identity of the shooter, but also the other elements of the charged offenses. Among other things, the prosecutor argued that Wright acted willfully and with sufficient premeditation and deliberation for the jury to convict him of attempted first-degree murder. The prosecutor did not make any argument concerning Wright's alleged flight or the consciousness of guilt that the jurors might infer from such flight.

In his closing argument, defense counsel referred to the identification of Wright as the person shown in the red cap in the Dollar Shop Video as the "crux of the case." He argued that the State failed to prove beyond a reasonable doubt that Wright was the person who was shown in the Dollar Shop Video shooting Tate. According to defense counsel, "the only assault on the video you see is Mr. Tate actually, without any provocation, there was an argument, he punches the person with the red hat in the face and now the

8

Prosecution … wants to bootstrap that and say, well, that must have been the person that came back."

Although the trial court did not provide the jury with a copy of the jury instructions prior to the start of its deliberations, after the jury sent a note containing legal questions, the trial court sent back a copy of the jury instructions in their entirety. One of the jury's questions asked about "rage" in connection with the attempted murder counts. While the trial transcript is somewhat unclear regarding that note, defense counsel stated at a later proceeding that "[t]he jurors asked a question right before they came back with their verdict; is rage a defense to the charges."

The jury convicted Wright of attempted murder in the first degree, use of a handgun in the commission of a crime of violence, and wearing, carrying, or transporting a handgun. The trial court sentenced Wright to 40 years of imprisonment, all but 25 years suspended on the attempted murder charge, and 15 years of imprisonment on the use of a handgun charge to run consecutive to the sentence for attempted murder. The trial court ruled that the conviction for wearing, carrying, or transporting a handgun merged for purposes of sentencing with the conviction for use of a handgun.

### C. Appeal

On appeal, Wright argued that the trial court erred in instructing the jury on flight. In a reported opinion, the Court of Special Appeals affirmed Wright's convictions. *Wright v. State*, 247 Md. App. 216 (2020). The intermediate appellate court relied on *Thompson v. State*, 393 Md. 291 (2006), in which this Court examined the propriety of flight instructions and approved the Maryland pattern jury instruction on flight that the trial court gave in this

case. *Wright*, 247 Md. App. at 230. The Court of Special Appeals explained that, "[a]lthough the particular issue of identity as the sole issue in the case was not before the *Thompson* court, the Court's reasoning is applicable. *Thompson* does not stand for the proposition that a flight instruction, when identity is the sole issue, is categorically impermissible; if the Court thought that to be the case, it could have said so, and it did not." *Id.* Concluding that "[i]t is not the law in Maryland that a flight instruction is categorically impermissible when identity is the sole issue at trial," *id.* at 233, the court declined to adopt the *per se* rule for which Wright argued. *Id.* Instead, the court examined the instruction the trial court gave on flight in the context of the jury instructions in their entirety, and held that the trial court did not abuse its discretion:

> The instruction, which referred to flight of "*a defendant*" and not "the defendant," did not imply to the jury that the court believed that appellant was the assailant…. [I]t is reasonable to infer that the jury was aware of one of the most fundamental distinctions in the English language—between "a" person or thing and "the" person or thing. We agree with the State that if the jury had concluded that appellant was *not* the person in the surveillance video, it would not have then concluded that he must be guilty because *someone* fled the scene.

> In addition, immediately following the instruction, the court reminded the jury that the State had the ultimate burden of proving that appellant was the assailant. The court instructed the jury that the burden was on the State to prove that "the offense was committed and the Defendant was the person who committed it." The court also told the jury that it was not required to draw an inference of guilt; the court said that "[a] person's flight immediately after the commission of a crime ... is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt." The court further instructed the jury not to draw any conclusions "about my views of the case." Viewing the instructions as a whole and the evidence in the case, we hold that the trial court did not err in instructing the jury on flight.

*Id.*

10

On September 16, 2020, Wright filed a petition for *certiorari* seeking review of the following question: "Did the trial court err in giving a flight instruction where the sole contested issue in the case was the identity of the person who committed the crime and fled the scene?" On November 10, 2020, we granted Wright's petition. *Wright v. State*, 471 Md. 265 (2020).[2]

## II

### Standard of Review

We review a trial court's decision to give a particular jury instruction for abuse of discretion. *Taylor v. State*, No. 2, Sept. Term 2020, slip op. at 25 (Md. April 23, 2021); *Hall v. State*, 437 Md. 534, 539 (2014). A trial court abuses its discretion if it commits an error of law in giving an instruction. *Harris v. State*, 458 Md. 370, 406 (2018).

## III

### Discussion

**A. The Maryland Pattern Instruction on Flight or Concealment**

The Maryland pattern jury instruction on flight or concealment provides:

FLIGHT OR CONCEALMENT OF DEFENDANT

A person's flight [concealment] immediately after the commission of a crime, or after being accused of committing a crime, is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt. Flight [concealment] under these circumstances may be motivated by a variety of factors, some of which are fully consistent with innocence. You must first decide whether there is evidence of flight [concealment]. If

---

[2] In the Court of Special Appeals, Wright also raised issues concerning Detective Greenfield's identification of Wright and the prosecutor's closing argument. The Court of Special Appeals rejected those claims of error, and Wright did not seek further review of them in his petition for *certiorari*.

you decide there is evidence of flight [concealment], you then must decide whether this flight [concealment] shows a consciousness of guilt.

MPJI-Cr 3:24.

In *Thompson v. State*, this Court held that the above instruction is a correct statement of Maryland law. 393 Md. at 303. We rejected the contention that, in giving this flight instruction to a jury, a judge impermissibly emphasizes one piece of circumstantial evidence over the remainder of the prosecution's case. *Id.* at 306. Rather, the instruction "attempts to insure that the jury does not imbue evidence of flight with more weight than it deserves." *Id.* We also noted that "[f]light evidence and a jury instruction on flight … are particularly appropriate in circumstances where a defendant places his or her mental status at the time that the crime was committed in issue." *Id.* at 308. We further explained that the flight instruction should not be given unless the jury may reasonably draw a chain of four inferences from the evidence adduced at trial:

> that the behavior of the defendant suggests flight; that the flight suggests a consciousness of guilt; that the consciousness of guilt is related to the crime charged or a closely related crime; and that the consciousness of guilt of the crime charged suggests actual guilt of the crime charged or a closely related crime.

*Id.* at 312.

In *Thompson*, there apparently was no dispute that Thompson was the person who fled the scene. However, the State failed to produce evidence from which the jury could reasonably draw the third of the required inferences: that Thompson's consciousness of

12

guilt was consciousness of guilt of the crimes for which he was on trial. *Id.* at 312-15.[3]

Because we could not conclude that the erroneous jury instruction was harmless beyond a reasonable doubt, we remanded for a new trial. *Id.* at 315.

### B. A Limitation on the Use of the Flight Instruction

In this case, unlike *Thompson*, Wright disputed that he was the person who fled the scene of the crime. Wright argues that, where the sole issue in dispute in a criminal trial is the identity of the fleeing assailant, it is error to give the flight instruction. In general, we agree with Wright on this point.

Under Maryland Rule 4-325(c), the trial court "may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given." This Court has interpreted Rule 4-325(c) "as

---

[3] In *Thompson*, shortly after a shooting, police responded to the scene and recognized Thompson as matching the description of the perpetrator provided by the victim and other witnesses. After a police officer ran toward Thompson and yelled for Thompson to stop, Thompson fled. 393 Md. at 294. When officers apprehended Thompson a short time later, they discovered a significant quantity of cocaine on him but no gun. *See id.* Thompson was charged with attempted first-degree murder, possession of a controlled dangerous substance with intent to manufacture and distribute, and related offenses. *Id.* at 294-95. Prior to trial, the court suppressed the cocaine-related evidence and dismissed the drug charges. *Id.* at 295. At trial, therefore, the jurors did not learn that Thompson was in possession of cocaine when he was arrested. We reasoned that, had the jurors known of Thompson's cocaine possession, they might have determined that Thompson fled to avoid apprehension for that crime rather than for an attempted murder committed shortly before in the same location. *See id.* at 313-14. Thus, we concluded that "[t]he circumstances of the case at bar impaired the confidence with which the inference that Mr. Thompson fled from police due to a consciousness of guilt with respect to the crimes charged could be drawn and rendered the instruction misleading[.]" *Id.* at 315.

requiring the trial court to give a requested instruction under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given." *Thompson*, 393 Md. at 302 (cleaned up).

As discussed above, the Maryland pattern instruction on flight or concealment is a correct statement of the law. With respect to the second requirement under Rule 4-325(c), whether a flight instruction "is applicable under the facts of the case" is, by definition, a case-specific determination. However, we are able to draw a general conclusion about cases in which the sole contested issue is the defendant's identity as the person who committed the charged offenses *and* fled the scene. In such a case, a flight instruction does not "aid the jury in clearly understanding the case, … provide guidance for the jury's deliberations, and … help the jury arrive at a correct verdict," *Chambers v. State*, 337 Md. 44, 48 (1994), and therefore generally should not be given. As the Appeals Court of Massachusetts explained in reviewing such a case,

> [t]here is no dispute that the same individual committed the offense and fled from the scene. The flight might be said to be evidence that the person who fled was aware that what had occurred between him and the victim was wrongful. There was no issue at trial, however, whether the incident had actually occurred or whether what had occurred was a crime, only whether the defendant was the one who committed it. The evidence of the assailant's flight with the fruits of the robbery did not shed any light on the issue of identification; it did not give rise to a reasonable inference that the defendant was the assailant. The instruction, therefore, given the posture of the case, was inapposite.

14

*Commonwealth v. Groce*, 517 N.E.2d 1297, 1300 (Mass. App. Ct. 1988); *see also Commonwealth v. Bastaldo*, 32 N.E.3d 873, 888 (Mass. 2015) (citing *Groce* with approval and holding that "a consciousness of guilt instruction regarding flight is generally inappropriate where there is no dispute that the crime was committed by the person fleeing from the crime scene, and the only contested issue is the identification of the defendant as the fleeing offender"). As the Supreme Judicial Court of Massachusetts explained, in these circumstances, "a consciousness of guilt instruction would provide no relevant guidance to the jury but would pose the risk that the jury might think the judge was suggesting that the defendant was the person who fled and therefore the person who committed the crime." *Bastaldo*, 32 N.E.3d at 888; *see also id.* at 889 ("Where, as here, the only live issue at trial was identification and it was plain that the person who fled was the assailant, the risk that a consciousness of guilt instruction might imply that the defendant was the person who fled outweighed the negligible benefit of instructing the jury that flight may be evidence of consciousness of guilt. Therefore, the judge erred in giving the instruction.").

We hold that, in general, it is error to give the flight instruction where the defense does not contest that whoever fled the scene is guilty of the charged offense, and instead contends only that the State failed to prove that the defendant was the fleeing offender. In such a case, whether the assailant demonstrated consciousness of guilt is irrelevant to the jury's determination. All the jury must decide is whether the defendant on trial was the fleeing offender.

Importantly, however, a trial judge should not be left to guess or speculate whether the sole issue in dispute at trial is the identity of the fleeing offender. In order for the

15

limitation on the flight instruction we adopt here to be applicable, defense counsel must expressly and unambiguously state – prior to the jury charge – that the defense solely contests the identity of the defendant as the fleeing offender. One way to do this would be for the parties to enter into a stipulation which says, in effect, that: (1) the parties agree the State has proven that the person who fled the scene is guilty of the charged offense(s); (2) the defendant disputes that the defendant is the person who committed the offense(s) and fled the scene; and (3) it is the State's burden to prove beyond a reasonable doubt that the defendant is the person who committed the offense(s) and fled the scene. Alternatively, if defense counsel tells the trial court prior to the jury charge that, in closing argument, the defense will not contest any issue other than the identity of the defendant as the fleeing offender, that will ordinarily suffice to make clear that it is the sole issue in dispute.[4] Without a stipulation or a timely and unequivocal statement by defense counsel that narrows the issue before the jury to the identity of the defendant as the fleeing offender, a trial court retains discretion to instruct the jury on flight if the evidence adduced at trial creates the chain of four inferences discussed in *Thompson*.[5]

---

[4] The defense may not render inadmissible otherwise admissible flight evidence by making this type of concession in its opening statement or at another point before the flight evidence is admitted. Indeed, we emphasize that, in order for the stipulation (or defense concession) to have effect, it must expressly state that the sole contested issue is the identity of the defendant as the person who committed the charged offense(s) *and fled*. This presupposes that the flight evidence in question is admissible and has been (or will be) put before the jury.

[5] We do not rule out the possibility that, if the defense affirmatively indicates that other elements besides identity of the fleeing offender are in dispute in opening statement and/or through cross-examination of the State's witnesses and its questioning of defense witnesses, a statement by defense counsel during the jury instruction conference that the

16

**C. The Trial Court Did Not Abuse Its Discretion in Giving the Flight Instruction in This Case.**

Wright makes three contentions in arguing that the trial court abused its discretion in giving the flight instruction in his case. First, he claims that the trial court should not have given the instruction because the sole issue in dispute was whether he was the person shown in the Dollar Shop Video fleeing the scene after shooting Tate. Second, Wright contends that, because the State failed to introduce evidence independently identifying him as the perpetrator in addition to the evidence of flight, the trial court erred in giving the instruction. Third, Wright argues that, by providing the jury with a heading for the instruction – "Flight or Concealment of a Defendant" – the trial court improperly implied that Wright was the person who fled the scene. None of these claims persuades us that the trial court abused its discretion.

1. Wright Did Not Unambiguously Make Identity the Only Contested Issue Prior to the Jury Charge.

To prove Wright guilty of the charged offenses, the State was required to prove beyond a reasonable doubt not only that Wright was the person who shot Tate, but also that, in doing so, Wright possessed the requisite mental state. Specifically, the State needed to prove: (1) willfulness, premeditation, and deliberation with respect to the attempted first-

_____

defense will contest only identity during closing argument may be insufficient to constrain the trial court's discretion to give the flight instruction. In addition, there may be other instances in which a trial court retains discretion to give the flight instruction despite a defendant's concession that identity of the fleeing offender is the sole issue in dispute. For example, where there is evidence that two people jointly committed the crime and fled the scene together, and only one defendant at trial unambiguously states that the only point they are disputing is their identity as one of the fleeing offenders, the trial court may retain discretion to give the flight instruction.

degree murder charge; (2) the actual intent to kill the victim for the attempted second-degree murder charge; (3) for the carrying a handgun with the purpose of injuring or killing another charge, that Wright wore, carried, or transported a handgun that was within his reach and available for his immediate use "with the deliberate purpose of injuring or killing another person"; and (4) for the use of a firearm in the commission of a crime of violence charge, that Wright used the weapon "to create fear of harm."

As stated above, in a case where there is evidence of flight,[6] if the defense wishes to render a flight instruction inapplicable because the defense is contesting only the identity of the defendant as the fleeing offender, the parties jointly or defense counsel unilaterally must expressly and unambiguously so inform the trial court prior to the jury charge. Here, not only did Wright's trial counsel never tell the court that the mental state elements were not in dispute; counsel suggested during his opening statement and in his cross-examination of Tate that the mental state of the shooter might well be a live issue.

In his opening statement, Wright's counsel told the jury that the video footage they would be viewing "just shows a small portion of what's going on" and that "there's a lot more to this case." In particular, defense counsel stated that, other than Tate, the State would not produce any of the witnesses to the shooting to testify "who the shooter was *and the circumstances around the shooting*." (Emphasis added). From this statement, the trial court (and the jury) could have concluded that the defense was keeping open the option of arguing in closing not only that the State had failed to prove that Wright was the shooter,

---

[6] The evidence of flight, as shown in the Dollar Shop Video, was admitted without objection.

18

but also that, by neglecting to provide the jury with the "circumstances around the shooting," the State had failed to prove Wright's mental state at the time of the shooting.

Defense counsel reinforced this impression during his cross-examination of Tate, when he asked Tate several questions that seemingly were irrelevant to the question of identity, but that might have some relevance to the shooter's mental state, including whether Tate remembered being in a fight prior to being shot, and whether he remembered punching anyone. Defense counsel also elicited from Tate that he was formerly a boxer. And he asked whether Tate had "been involved in physical altercations before," at which point the trial judge sustained the prosecutor's objection.

During the jury instruction conference, defense counsel stated that "the whole crux of the case was that Mr. Wright did the shooting." However, defense counsel did not say that Wright's identity as the fleeing offender was the only issue in the case, that the sole defense argument would be about identity, or that he would concede in his closing argument that the State had proved all the other elements of the charged offenses, including the mental state elements.

Trial judges are not clairvoyant. Prior to instructing the jury, the trial judge in Wright's case did not know what defense counsel was going to argue in his summation. If defense counsel believed that the flight instruction was unnecessary and inappropriate because the defense was going to solely contest identity in closing argument, it was

19

incumbent upon defense counsel to explain that to the trial court. Wright's counsel did not do so.[7]

2. The State Was Not Required to Introduce Evidence of Flight That Was Distinct from Evidence That Wright Committed the Crime in Order to Generate a Flight Instruction.

Alternatively, Wright argues that the trial court erred in giving the flight instruction because, according to Wright, the only evidence of his identity as the shooter was also the evidence that he fled the scene of the crime. In Wright's view, "[w]here there is no evidence of flight by the defendant apart from the evidence identifying him as the criminal actor, a flight instruction is not helpful to the jury in its assessment of the defendant's guilt" and therefore should not be given.

In support of this contention, Wright cites cases from California, including *People v. Rhodes*, 258 Cal. Rptr. 71 (Cal. Ct. App. 1989). In *Rhodes*, the California Court of Appeal held that a flight instruction was proper where, although the defendant contested his identity as the person who committed an arson, there was evidence that a witness saw the defendant running away from the burning building. *Id.* at 73-74. Indeed, the defendant acknowledged in his trial testimony that he encountered the witness near the burning property. *See id.* at 74. The court explained that, "where there is independent evidence of

_____

[7] The prosecutor apparently did not understand the mental state elements to be undisputed, as she devoted a substantial portion of her closing argument to them. In addition, in his closing argument, defense counsel told the jury that the "only assault" visible on the Dollar Shop Video was Tate's punch of the person wearing the red cap. Although the defense did not request a self-defense instruction, it is telling that the jury sent a note asking about "rage." Whether intentional or not, defense counsel seemingly raised the question in at least one juror's mind whether Tate's aggressive acts could justify the shooting or otherwise mitigate the jury's verdict.

flight as to which defendant's identity as the fleer is not in dispute," it is not error to give a flight instruction. *Id.* From this formulation, Wright argues that it *is* error to give a flight instruction where the evidence of flight is the same evidence upon which the State relies to prove the commission of the offense.

As a threshold matter, we note that there was independent evidence that Wright committed the offense apart from the portion of the Dollar Shop Video that showed the shooter fleeing the scene. Tate testified that "Lo" shot him. In addition, Detective Greenfield identified Wright as the person wearing the black shirt and red cap in the Miami Chicken Video less than an hour before the shooting, and just around the corner from the location of the shooting. Both Tate and Detective Greenfield also identified Wright in the courtroom. Thus, even if the portion of the Dollar Shop Video showing the shooter's flight had not been played for the jury, the jury reasonably could have found from Tate's testimony, and from a comparison of the clothing Wright wore in the Miami Chicken Video to the clothing worn by the assailant shown in the Dollar Shop Video, that Wright was the assailant.

In any event, our reading of *Rhodes* differs from Wright's. In our view, *Rhodes* stands for the unremarkable proposition that, even where the sole contested issue at trial is the defendant's identity as the person who committed the offense, if there is an identification of the defendant as fleeing the scene that reasonably can be perceived as demonstrating consciousness of guilt, the trial court may give a flight instruction.

To the extent that *Rhodes* and any other California cases can be read to hold that a trial court may instruct on flight only where the prosecution has introduced evidence of

21

flight that is independent of evidence of the commission of the offense,[8] we disagree. In some cases, including this one, the same evidence can do double duty. Consider a hypothetical arson case in which video footage shows a person resembling the defendant running out of a building holding a large container shortly before flames are seen in the building. In that instance, the video provides evidence that the defendant had the opportunity to set the fire, as well as flight evidence from which the jury may infer consciousness of guilt. We have no doubt that, in such a case, the trial court would have the discretion to instruct the jury on flight, in the absence of a stipulation or a timely, express, and unequivocal statement from defense counsel that the defense was not contesting that the person in the video footage was the fleeing arsonist, but rather was only contesting whether the defendant was the person shown in the video.

The same is true in this case. The Dollar Shop Video showed who the shooter was, and the shooter's flight was evidence of his consciousness of guilt. That the prosecutor ultimately did not make any argument concerning the shooter's flight and consciousness of guilt in her summation does not mean that the flight instruction was improper.

---

[8] We read the California cases as ambiguous on this point. For example, in one case, the California Supreme Court stated: "[D]efendant argues that the [flight] instruction should not have been given because the sole question for the jury was whether defendant was the perpetrator of the charged offenses and there was no evidence of flight by defendant apart from his identification as the perpetrator. We have held to the contrary." *People v. Elliott*, 269 P.3d 494, 534 (Cal. 2012). However, the Court went on to distinguish between witnesses who saw the defendant commit the crime and begin his flight in one part of a grocery store, and witnesses who only saw the defendant fleeing elsewhere through the store, *id.*, seemingly suggesting that if the only witnesses who had identified the defendant as fleeing were those who had also seen him commit the offense, the flight instruction would not have been properly given. If that indeed was what the *Elliott* Court held, we disagree with its holding.

3. The Trial Court Did Not Err in Providing the Jury with a Heading to the Instruction That Referred to "a Defendant."

Finally, Wright argues that the flight instruction "conveyed to the jury that the trial judge believed Mr. Wright was the person who fled and inappropriately implied that the act of fleeing somehow enhanced the identification of … Mr. Wright … by preceding the pattern instruction with the phrase 'flight or concealment of a defendant.'"[9] According to Wright, because he "was the only defendant in the case, this instruction implied that [he] was the one who ran from the scene, and thus that he was the shooter."

The State responds by ascribing significance to the trial court's reference to "*a* defendant" in the heading, as opposed to "*the* defendant." (Emphasis added). The State argues (and the Court of Special Appeals opined, *see Wright*, 247 Md. App. at 233) that the distinction between the indefinite article "a" and the definite "the" "is one of the most fundamental distinctions in English[.]" Thus, the State contends, the jury would have understood that, in referring to "a defendant," the trial court was not referring to "the" particular defendant before the court, *i.e.*, Wright.

In addition, the State notes that the trial court instructed the jury not to draw any conclusion "about [the court's] views of the case." Further the State observes that the flight instruction made clear that the jurors were not required to draw an inference of guilt, and

---

[9] The trial transcript reflects that the trial judge read this heading to the jury when she instructed the jury prior to the jury beginning its deliberations. After the jury sent a note with legal questions, the trial judge sent a copy of the instructions back to the jury. We have not located a copy of the written instructions provided to the jury in the record. However, we assume for our purposes that the written copy included the same heading that the trial judge read to the jury in open court.

that a few moments after covering the issue of flight, the trial court instructed the jury that the burden was on the State to prove that "the offense was committed and that the Defendant was the person who committed it." In sum, the State contends that the inclusion of the heading referring to "a defendant" was in no way prejudicial because "[i]f the jury, undoubtedly aware of the distinction between 'a' and 'the,' concluded that Wright was not the person in the security video, it would have been nonsensical for it to conclude that he must still be guilty so long as *someone* fled the scene."

Although it would have been preferable for the trial court in this case – where Wright contested that he was the person who was shown in the Dollar Shop Video fleeing the scene – to omit any reference to "defendant" from the heading of the flight instruction, we do not perceive any prejudice to Wright based on the court not having done so.[10] Significantly, defense counsel did not ask the court to omit the word "defendant," or to omit the heading entirely, from its reading of the instruction. Moreover, the text of the instruction did not refer to "a defendant's flight," but rather to "a person's flight." We are confident that the "jury would consider the entire jury charge and employ its common sense to reach the conclusion that it should consider the relevance of [Wright's] flight only if it

---

[10] Notably, the heading above the text of the flight or concealment instruction in the Maryland Criminal Pattern Jury Instructions is "FLIGHT OR CONCEALMENT OF DEFENDANT." MPJI-Cr 3:24. Although it would have been preferable to omit the reference to "a defendant" from the heading as the trial court provided it to the jury, the trial court's formulation was a better fit for this case than the Pattern Instructions' article-less "defendant," which could be interpreted as meaning "*the* defendant." Going forward, we encourage trial courts in cases where the evidence generates a flight instruction, but where the defendant disputes that they were the person who fled, to refer to the pattern instruction simply as "Flight or Concealment" if the court wishes to provide the jury with a heading.

first identified him as the person who fled." *Germany v. State*, 999 P.2d 63, 69-70 (Wyo. 2000). This was especially so here, where it was clear to the jury throughout the case that the identity of Wright as the person who shot Tate and fled was hotly contested. In addition, any confusion that the heading theoretically could have injected was alleviated by the trial court having told the jury not to draw any conclusions about its "views of the case," and by the court's additional instruction telling the jury that the burden was on the State to prove that "the offense was committed and that the Defendant was the person who committed it."

**IV**

**Conclusion**

In general, a trial judge should not give a flight instruction to the jury where the sole contested issue at trial is the defendant's identity as the fleeing offender. Because Wright's counsel did not make a timely, express, and unequivocal statement that the sole contested issue in Wright's trial was his identity as the person who shot Tate and fled, the trial court had discretion to instruct the jury on flight. Based on the circumstances of this case, the trial court did not abuse that discretion. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

25