*Robert Rainey v. State of Maryland*, No. 54, September Term, 2021. Opinion by Hotten, J.

**CRIMINAL LAW – JURY INSTRUCTION – DESTRUCTION OR CONCEALMENT OF EVIDENCE**

A destruction or concealment of evidence jury instruction, like any consciousness of guilt jury instruction, requires the State to provide "some evidence" to support a chain of four inferences ("*Thompson* inferences") connecting the destruction or concealment of evidence to actual guilt. In the case at bar, the State requested and, the circuit court gave, a destruction or concealment of evidence jury instruction based on the defendant cutting off shoulder-length dreadlocks between the time of the murder and the time of the arrest. The State produced eyewitness testimony and surveillance video that established the defendant wore dreadlocks at the time of the murder. The eyewitness testified that the defendant was a constant presence in the area and that the defendant shot the victim multiple times following a dispute over money. The eyewitness saw the defendant five weeks later in the same area with close-cropped hair. The Court of Appeals held that the circuit court did not abuse its discretion by giving a destruction or concealment of evidence jury instruction based on the evidence that the defendant cut off his shoulder-length dreadlocks between the time of the arrest and the time of the murder.

**CRIMINAL LAW – JURY INSTRUCTION – *THOMPSON* INFERENCES**

The circuit court is presumed to know and correctly apply the law. The circuit court is also not required "to spell out in words every thought and step of logic[]" when rendering a decision. *Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993). The Court of Appeals held that the circuit court was not required to articulate its reasoning for giving a destruction or concealment of evidence jury instruction on the record. Upon independent review, the Court concluded that there was no indication in the case at bar that the circuit court erred in finding some evidence to satisfy the four *Thompson* inferences necessary to give the destruction or concealment of evidence jury instruction.

**CRIMINAL LAW – HARMLESS ERROR – JURY INSTRUCTION**

Assuming, *arguendo*, that the circuit court erred in giving a destruction or concealment of evidence jury instruction, the Court of Appeals held that the error was harmless beyond a reasonable doubt. The evidence presented at trial, as emphasized by the State, specifically concerned whether the defendant's cutting off his dreadlocks suggested consciousness of guilt. While the circuit court in the case at bar could have tailored the destruction or concealment of evidence instruction to specifically reference the change in appearance, the jury understood that the instruction referred to the cutting of dreadlocks. The instruction appropriately cautioned the jury that they first must determine whether the defendant destroyed evidence, and only then, whether the act suggested consciousness of guilt.

Circuit Court for Baltimore City
Case No. 117186008
Argued: June 1, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 54

September Term, 2021

_____

ROBERT RAINEY

v.

STATE OF MARYLAND

_____

Watts,
Hotten,
Booth,
Biran,
Eaves,
McDonald, Robert N.,
 (Senior Judge, Specially Assigned)
Getty, Joseph M.,
 (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.

_____

Filed: August 11, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In a matter of first impression, we are asked to determine whether it was reversible error for a circuit court to give a destruction or concealment of evidence jury instruction based on evidence that the defendant cut off his dreadlocks between the time of the crime and the arrest.

On May 2, 2017, members of the Baltimore City Police Department ("BCPD") responded to a shooting in the 800 block of North Glover Street in Baltimore City. An officer found Mr. Dartania Tibbs deceased in an alley. A nearby witness identified the shooter as Mr. Robert Rainey ("Petitioner"). At the time of the shooting, Petitioner wore shoulder-length dreadlocks. Approximately a month later, the witness recognized Petitioner on the street, but with a very short, close-cropped haircut. The witness called 911, and BCPD arrested Petitioner and charged him with first-degree murder, use of a handgun in a crime of violence, and possession of a firearm after a disqualifying conviction.

During a jury trial before the Circuit Court for Baltimore City, the State requested a destruction or concealment of evidence jury instruction based on evidence that Petitioner had cut his dreadlocks between the time of the murder and the time of his arrest. Over objection from defense counsel, the circuit court gave the pattern jury instruction for destruction or concealment of evidence. The jury found Petitioner guilty of first-degree murder and related gun offenses. The circuit court sentenced Petitioner to life in prison for first-degree murder and twenty years for the other offenses to run concurrently with the first-degree murder sentence, the first five years without the possibly of parole.

Petitioner appealed the convictions to the Court of Special Appeals, which affirmed. The intermediate appellate court found sufficient evidence to generate the destruction or concealment of evidence jury instruction, but acknowledged it would have been preferable to have customized the jury instruction to specifically describe the cutting of hair between the time of the crime and the arrest. According to the court, any error relative to the destruction or concealment of evidence jury instruction was harmless because the jury knew the instruction referred to Petitioner's cutting of hair and did not improperly affect the decision of the jury beyond a reasonable doubt.

We granted *certiorari* on January 11, 2022, *Rainey v. State*, 477 Md. 149, 266 A.3d 990 (2022), to address the following questions:[1]

> 1. As a matter of first impression, can a suspect's change in appearance (in this case, a change in hairstyle) at some point between the time of the crime and the time of his arrest[,] support a [destruction or concealment of evidence] jury instruction?
>
> 2. Under the four-inference test adopted in *Thompson v. State*, 393 Md. 291[, 901 A.2d 208] (2006), [consciousness of guilt] jury instructions may not be given unless evidence supports all four of the necessary inferences. As a matter of first impression, is [the circuit court] required to consider the four inferences on the record before giving a [consciousness of guilt] jury instruction, here a [destruction or concealment of evidence] instruction?
>
> 3. Even if the [circuit] court is not required to state its reasoning regarding the four inferences on the record, (a) was it improper to give the instruction in this case where the evidence did not support the four inferences because [P]etitioner had not been charged or arrested at the time of his haircut and there was no evidence that he was aware that he was the subject of an investigation, and (b) is reversal required where there is no indication in the record that the [circuit] court considered the four *Thompson* inferences?

---

[1] The order granting the petition for *certiorari* declined to adopt a sixth question presented by Petitioner pertaining to the admission of particular evidence.

4.  Did the intermediate appellate court err in holding that although "it is preferable, in all cases in which a defendant has allegedly changed his appearance in order to avoid identification, to employ a custom instruction that focuses on the change of appearance as potential evidence of consciousness of guilt," the giving of the [destruction or concealment of evidence] instruction was harmless in this case because a different modified instruction that does not include the language, "You have heard evidence that the defendant destroyed evidence" could have been given but was not?

5.  Was giving the [destruction or concealment of evidence] jury instruction harmless error where the pattern instruction was not modified, the prosecutor relied on the instruction in closing argument, the jury asked multiple questions during deliberations regarding changes in [P]etitioner's appearance, and significant evidence pointed to the guilt of another party?

(Internal quotations omitted).

We hold that a change in appearance between the time of the crime and the arrest may support a destruction or concealment of evidence jury instruction when there is some evidence to support all four consciousness of guilt inferences connecting the change in appearance to actual guilt. We also hold that there was some evidence to support all four consciousness of guilt inferences in the case at bar, and the circuit court was not required to articulate these inferences on the record. Finally, we agree with the Court of Special Appeals that it would have been preferable for the circuit court to have tailored the pattern destruction or concealment of evidence jury instruction to reflect the facts of this case, but any error relative to the instruction in the case at bar was harmless. Accordingly, we answer the first and last question in the affirmative, the second, third, and fourth question in the negative, and shall affirm the judgment of the Court of Special Appeals.

3

*Underlying Incident*

At 5:31 p.m. on May 2, 2017, law enforcement responded to a shooting in the 800 block of North Glover Street in Baltimore City. BCPD Officer Kent Sowers found Mr. Dartania Tibbs deceased in an alley. Mr. Tibbs was struck by six bullets from close range. At approximately 5:00 p.m., Citiwatch and nearby surveillance video footage captured Petitioner excitedly gesticulating at Mr. Tibbs when Mr. Tibbs refused to hand over 70 dollars to Petitioner. Citiwatch and surveillance footage depicted a woman and young child within view of the scene of the murder. Law enforcement identified the woman as Daphne Creighton.

Ms. Creighton had lived in the neighborhood for several years. She was familiar with the illicit drug trade occurring within the neighborhood and Petitioner's specific involvement in the local drug trade for the past twelve to eighteen months. Ms. Creighton was outside on her steps with her grandson and dog, when she saw and heard Mr. Tibbs and Petitioner arguing over money.

Ms. Creighton gave a statement to law enforcement later that evening:

Officer: Ma'am describe the first person. I know you said something about some dreads. Describe the guy with the dreads.

Ms. Creighton: He was tall, slim, and *usually he's around here all the time*. . . . Well, *he usually has these two outfits he wears all the time*. . . . It's usually a break[2] t-shirt and some dusty blue jeans and some black shoes. . . . Then he got another outfit that he wears, which is a white t-shirt

---

[2] Ms. Creighton most likely meant a "black t-shirt" and a "break t-shirt" was probably a transcription error.

with . . . blue shorts. And that's what I remember today was the shorts, but I wasn't sure about the t-shirt.[3]

Six days later, law enforcement presented Ms. Creighton with a photo array of men wearing shoulder-length dreadlocks. Ms. Creighton selected a picture of Petitioner and wrote in a box labeled "STATEMENT" beneath the picture: "This Gentleman looks closely to me like the shooter I saw[.]"[4] BCPD officers asked Ms. Creighton to call the police if she saw Petitioner again on the street. On June 6, 2017, Ms. Creighton saw Petitioner near her home, but with a short haircut. She called 911, and BCPD officers arrested Petitioner.

### Circuit Court Proceedings

The case proceeded to a six-day jury trial in the Circuit Court for Baltimore City. The State called twelve witnesses, including members of law enforcement, a crime lab technician, a forensic analyst, and a medical examiner. Ms. Creighton was the only witness who provided a first-hand account of the events in her testimony.

---

[3] When law enforcement first approached Ms. Creighton at the scene, Ms. Creighton stated that the suspect was wearing a "[b]lack t-shirt, blue jean shorts, long dreads." Ms. Creighton testified that she inadvertently mixed up the t-shirt color because she was experiencing stress and apprehension about talking to law enforcement soon after the shooting. Ms. Creighton was also upset because of her grandson's proximity to a shooting. While Ms. Creighton feared retribution for speaking up, she shared her observations with law enforcement "[b]ecause somebody got to make a difference."

[4] Petitioner notes that Ms. Creighton gave this identification with 70% confidence. Ms. Creighton testified that she was "sure" about "the eyes, the nose, and the facial structure," but was initially thrown off by the appearance of a goatee and Petitioner's comparably lighter complexion in the photograph than from what she recalled from the street. When Ms. Creighton later saw (and heard) Petitioner outside of her house on June 6, 2017, she was a "hundred percent" sure it was the same person that shot Mr. Tibbs.

5

Ms. Creighton testified that she was sitting on her front steps when she overheard Petitioner and Mr. Tibbs arguing about money. According to Ms. Creighton, Petitioner wore dreadlocks that were "hanging loose and going back and forth." According to Ms. Creighton, Petitioner wore "a white t-shirt, shorts, and a pair of gray New Balance shoes[.]" This description matched nearby surveillance video footage.

Ms. Creighton stated that Petitioner had stood on the nearby corner selling drugs "all the time[]" for about twelve to eighteen months before the shooting. Ms. Creighton witnessed Petitioner engaged in an argument with Mr. Tibbs, but saw Petitioner walk away after Mr. Tibbs refused to give him money. Ms. Creighton remained outside on her steps with her grandson, and a short time later heard several loud "booms[.]" Ms. Creighton saw Petitioner "with his arm raised and the other man lying in the alley." Immediately following the shooting, Ms. Creighton saw Petitioner look up and down the street and run off. Ms. Creighton stepped into the street and saw Mr. Tibbs lying in the alley.

Approximately a month later, on June 6, 2017, Ms. Creighton saw Petitioner, and following the instructions from law enforcement, she dialed 911 and the police arrested him. Ms. Creighton testified that between the shooting and the arrest, Petitioner cut his shoulder-length dreadlocks to a short, close-cropped hairstyle.[5] Ms. Creighton identified Petitioner as the shooter in open court and stated that she was "100 percent sure" that Petitioner was the man who murdered Mr. Tibbs.

---

[5] Ms. Creighton saw Petitioner on Memorial Day, but did not call the police because he left the area too quickly.

6

The State introduced into evidence several video exhibits that captured Petitioner and Mr. Tibbs before the murder. Ms. Creighton identified both men in a surveillance video played by the State. The State also admitted video evidence that showed Petitioner using a red Toyota convertible on the day of the murder. Two days after the shooting, law enforcement stopped a person, not Petitioner, driving the same red Toyota convertible. The driver went down a nearby alley, which the police suspected was an attempt to hide the murder weapon. Law enforcement entered the alley and discovered the murder weapon placed in the wheel well of a parked truck. Law enforcement also recovered Petitioner's fingerprints on the red Toyota convertible.

The State requested a pattern jury instruction on destruction or concealment of evidence based on the fact that Petitioner had dreadlocks at the time of the shooting, but cut his hair short at some point before his arrest and after fleeing the scene:

> We have a photo from March with shoulder-length dreadlocks and we have a photo from June with a clean shaven head. And the State's argument is that drastically altering one's physical appearance in close proximity to the commission of a crime is an attempt to avoid detection. [Maryland Pattern Jury Instruction ("MPJI")] 3:26, is, "Concealment or destruction of evidence is consciousness of guilt," and in my experience that's typically associated with physical evidence.

***

> But I think drastically changing your physical appearance within a month of the crime, when we know that months prior to the crime you were a different look, is sufficient consciousness of guilt for the jury to decide whether or not that is a proven fact. That's the basis for the request.

Defense counsel for Petitioner objected to the proposed instruction as unsupported by the evidence:

7

There is no testimony given at all that [Petitioner] destroyed evidence or concealed it.

*** 

[T]here were no dates given when he cut his hair, there was no testimony about why he cut his hair . . . [s]o for us to decide for the jury that . . . in those videos and in those still photos that that is [Petitioner], when the only testimony given is from Daphne Creighton [] and no other proof that that's [Petitioner], we are, by giving this instruction, deciding for the jury already that that is [Petitioner] with the dre[a]ds on that day.

Then we're taking it a step further and telling the jury that him cutting his hair is destroying evidence. If that's the case when we cut our hair . . . we could be deemed to be doing it to destroy evidence, and . . . I think that it's more than reaching. I think it's very prejudicial to [Petitioner] and just false.

The circuit court gave the pattern destruction or concealment of evidence jury instruction over defense counsel's objection:

You have heard that the Defendant destroyed or concealed evidence in this case. Concealment or destruction of evidence is not enough, it is not enough by itself to establish guilt, but may be considered as evidence of guilt. Concealment or destruction of evidence may be motivated by a variety of factors, some of which are fully consistent with innocence. You must first decide whether the Defendant destroyed or concealed evidence in this case. If you find that the Defendant destroyed or concealed evidence in this case, then you must decide whether that conduct shows a consciousness of guilt.

The circuit court delivered other jury instructions that spanned sixteen pages in the record and lasted approximately thirty minutes. In addition to jury instructions relating to the burden of proof, the role of the jury, and an explanation of the charges, the circuit court instructed the jury regarding the weight of witness testimony and flight.

The jury retired to deliberate at 12:46 p.m. on July 18. The circuit court released the jury for lunch at 12:53 p.m., and ordered the jury to reconvene at 2:00 p.m. The jury recessed at 4:33 p.m., and reconvened deliberations at 9:30 a.m. on July 19. The jury

8

reached a verdict by 10:50 a.m. The jury deliberated no more than three and a half to four hours following a six-day trial.

The jury sent several notes to the circuit court during deliberations, but only one concerned an issue relevant to the case at bar: "How much does R. Rainey, Defendant, weigh now? How much did R. Rainey weigh in June 2017? How tall is Mr. R. Rainey?" The circuit court responded, "You have all of the evidence."

The jury found Petitioner guilty of first-degree murder, using a handgun in a crime of violence, and possessing a firearm after a disqualifying conviction. The circuit court sentenced Petitioner to life in prison for first-degree murder, twenty years for the handgun offense with the first five years without the possibility of parole, and five years on the possession offense without parole, both to run concurrently with the first-degree murder conviction. Petitioner timely appealed to the Court of Special Appeals.

### *Opinion of the Court of Special Appeals*

After the parties filed their briefs, the intermediate appellate court requested further briefing on (1) whether the circuit court abused its discretion by failing to state on the record that it had determined the evidence supported each of the four inferences necessary for a consciousness of guilt instruction pursuant to *Thompson v. State*, 393 Md. 291, 901 A.2d 208 (2006). The court also requested briefing on (2) whether a person's physical appearance constituted evidence for purposes of a consciousness of guilt instruction, and (3) whether the given instruction, assuming it was error, was harmless. The Court of Special Appeals affirmed the circuit court and concluded that the circuit court did not abuse

9

its discretion by giving a destruction or concealment of evidence jury instruction, and any error was harmless. *Rainey v. State*, 252 Md. App. 578, 260 A.3d 711 (2021).

While the circuit court did not expressly discuss the *Thompson* inferences or whether they were satisfied in the instant case, the Court of Special Appeals found that the circuit court's silence did not equate with lack of consideration. *Id.* at 594, 260 A.3d at 720. Circuit courts are presumed to know the law and apply it correctly, and the intermediate appellate court did not find any indication to the contrary. *Id.*, 260 A.3d at 720. The Court of Special Appeals held that the circuit court did not err in failing to express its analysis of *Thompson* on the record. *Id.* at 595, 260 A.3d at 720.

The court also found that a defendant's physical appearance may constitute "evidence" at trial. *Id.* at 598, 260 A.3d at 722. No Maryland case had directly considered whether a person's hair constituted evidence, but the court was persuaded by the State's citation of cases from Maryland and sister jurisdictions in which physical attributes were considered evidence. *Id.*, 260 A.3d at 722. Accepting the premise that hair constitutes evidence, the court reasoned "that when defendants do something to remove [hair] . . . they can properly be said to have destroyed or concealed evidence." *Id.*, 260 A.3d at 722 (citation omitted).

After establishing that cutting hair may be synonymous with destruction or concealment of evidence, the court found "some evidence" to generate the *Thompson* inferences. *Id.*, 260 A.3d at 722. State exhibits and testimony from Ms. Creighton demonstrated that Petitioner wore dreadlocks at the time of the shooting. The court also noted that "[Petitioner] abruptly disappeared for a month after the shooting." *Id.* at 599,

10

260 A.3d at 723. Approximately a month later, Petitioner returned with his hair "cropped closely to the skull instead of shoulder-length dreadlocks." *Id.*, 260 A.3d at 723. According to the court, this evidence satisfied the four *Thompson* inferences. *Id.*, 260 A.3d at 723.

The court rejected Petitioner's contention that the jury instruction presupposed guilt. *Id.* at 600, 260 A.3d at 724. The jury considered testimony and saw exhibits that demonstrated Petitioner had cut his hair, and the court noted the instruction informed the jury that they must "first decide whether the Defendant destroyed or concealed evidence in this case." *Id.*, 260 A.3d at 724. The court found that the instruction adequately cautioned the jury that destruction or concealment of evidence "is not enough . . . by itself to establish guilt . . . [as such evidence] may be motivated by a variety of factors, some of which are fully consistent with innocence." *Id.*, 260 A.3d at 724. Finally, the court observed that the instruction did not suggest Petitioner was the assailant. *Id.* at 601, 260 A.3d at 724.

The court concluded, *arguendo*, that any error regarding the instruction was harmless beyond a reasonable doubt. *Id.* at 602, 260 A.3d at 725. The court reasoned that the destruction or concealment of evidence instruction was synonymous with change in appearance. While the circuit court could have given a customized change-in-appearance instruction, the jury "undoubtedly understood" that the destruction or concealment of evidence instruction conveyed the same meaning. Therefore, "[Petitioner] was not harmed by the [circuit] court's error, if any." *Id.* at 604, 260 A.3d at 726.

11

## The Contentions of the Parties

### A.     Petitioner

Petitioner acknowledges the prerogative of the State to *argue* that changing one's appearance evinces consciousness of guilt, but according to Petitioner, a destruction or concealment of evidence *jury instruction* was not appropriate in the case at bar because there was no evidence to generate such an instruction. Petitioner further contends that the destruction or concealment of evidence instruction was inapplicable to the instant case because it took an instruction typically given for physical evidence, such as an incriminating weapon or communication, and applied it to an aspect of a person's appearance.

Petitioner argues that the State failed to satisfy any of the prerequisites to generate a consciousness of guilt jury instruction. First, Petitioner contends there was no evidence to support the first and second (of four) *Thompson* inferences: change in hairstyle suggested a desire to conceal evidence, and a desire to conceal evidence indicated a consciousness of guilt. According to Petitioner, two considerations inform whether a particular post-crime behavior suggests consciousness of guilt: (1) the defendant's awareness of a criminal investigation, and (2) the amount of time that elapsed between the crime and post-crime behavior. Petitioner contends that there was no evidence that he was subject to a police investigation, and that approximately five weeks had elapsed between the crime and the change in his appearance. According to Petitioner, the change in hairstyle "could be interpreted as self-inculpatory only by permitting the jury to speculate as to [P]etitioner's motive for making the change." Petitioner argues that the Court of Special Appeals erred

12

in relying on Ms. Creighton's testimony as some evidence establishing destruction or concealment of evidence. According to Petitioner, Ms. Creighton never testified that Petitioner "disappeared[.]" At most, Petitioner contends, Ms. Creighton's testimony demonstrates that a haircut may have occurred within five weeks of the murder.

Second, Petitioner argues that, as a necessary condition for a destruction or concealment of evidence jury instruction, the defendant must "be aware that his hair is in fact evidence[.] . . ." Otherwise, according to Petitioner, the instruction decides for the jury that Petitioner was the person with dreadlocks that murdered Mr. Tibbs. According to Petitioner, hair did not meet the definition of evidence as provided in MPJI-CR 3:00.[6] Petitioner contends that the evidence jury instruction, MPJI-CR 3:00, may have confused jurors in this case, when there was also a destruction or concealment of evidence instruction

---

[6] MPJI-CR 3:00 provides in relevant part:

In making your decision, you must consider the evidence in this case; that is

    (1) testimony from the witness stand; [and]

    (2) physical evidence or exhibits admitted into evidence; [and]

    (3) [stipulations; and]

    (4) [depositions; and]

    (5) [facts that I have judicially noticed.]

In evaluating the evidence, you should consider it in light of your own experiences. You may draw any reasonable conclusion from the evidence that you believe to be justified by common sense and your own experiences.

13

given that asked jurors to consider whether "evidence" was destroyed that did not fit into the definition provided in MPJI-CR 3:00.

Petitioner also argues that the circuit court erred by not placing its *Thompson* inference analysis on the record, because there was no indication that the circuit court considered the required inferences and whether each was supported by the evidence. Petitioner contends that placing reasoning on the record safeguards against unwarranted instructions, takes the guesswork out of appellate review, and protects against unfair advantage to one of the parties. According to Petitioner, this Court has required the circuit court to articulate its reasoning on the record when determining whether to admit evidence of a defendant's prior bad acts or crimes.

Petitioner argues that giving a destruction or concealment of evidence instruction was not harmless error and warrants reversal. Petitioner uses the factors outlined in *Dionas v. State*, 436 Md. 97, 110–13, 80 A.3d 1058, 1066–68 (2013), to argue that the error was not harmless: nature and effect of the error, jury's behavior during deliberations, and length of deliberations. According to Petitioner, the nature of the error was that the instruction presupposed Petitioner's guilt, which invaded the province of the jury. The weight given to binding jury instructions exacerbated the error. According to Petitioner, the error also influenced the behavior of the jury. The jury asked about Petitioner's appearance and returned a verdict three and a half to four hours after beginning deliberations. The State, according to Petitioner, relied on the erroneous instruction by emphasizing the haircut during closing argument.

Petitioner also argues that the circuit court presupposed guilt by identifying Petitioner as "the defendant" as opposed to "a defendant" in the destruction or concealment of evidence jury instruction. According to Petitioner, the definite article "the" implied that Petitioner was the person who murdered Mr. Tibbs, and the jury instruction should have referred to an abstract defendant.

Finally, Petitioner contends that it was error not to provide a tailored alteration of appearance instruction because the label, alteration of appearance, is more neutral, and therefore less prejudicial, compared to destruction or concealment of evidence. According to Petitioner, the Court of Special Appeals improperly applied the harmless error analysis by suggesting that the destruction or concealment of evidence instruction was substantively similar to an alteration of appearance instruction. Petitioner argues that the error was not harmless beyond a reasonable doubt and warrants reversal.

## B.     The State

The State counters that Ms. Creighton's testimony, coupled with surveillance footage and forensic evidence, provided sufficient evidence to generate a "Concealment or Destruction of Evidence as Consciousness of Guilt[]" jury instruction. Ms. Creighton knew Petitioner sold drugs in the neighborhood and witnessed Petitioner and Mr. Tibbs engaged in an argument minutes before the murder. According to the State, the combination of Ms. Creighton's testimony, the surveillance video, and recovered forensic evidence established that Petitioner shot Mr. Tibbs six times in broad daylight before fleeing the scene and dramatically changing the appearance of his hair from shoulder-length dreadlocks to a close crop. The State contends that, from this evidence, the jury

15

could reasonably infer that when Petitioner changed his hairstyle, he knew he assaulted or murdered Mr. Tibbs in public, on a street block where he stood daily, and that had multiple security cameras. According to the State, these circumstances distinguished Petitioner's conduct from otherwise innocent activity.

The State contends there is no requirement for law enforcement to notify Petitioner of his wanted status to generate a consciousness of guilt instruction. In addition, the State asserts that this Court should reject the argument that MPJI-CR 3:00 precludes hair from being considered evidence in this case. The definition of evidence in MPJI-CR 3:00 does not define evidence as contemplated by MPJI-CR 3:26. According to the State, confining the definition of all evidence to MPJI-CR 3:00 would make MPJI-CR 3:26 unavailable any time the defendant destroyed or concealed evidence before trial. The State contends that Maryland common law already considers identifying physical characteristics as admissible evidence.

The State argues that the circuit court did not need to express the *Thompson* inferences on the record because (1) it is presumed that the circuit court knows and applies the law correctly, and (2) sufficiency of evidence to generate a jury instruction presents a legal question which this Court reviews *de novo*.

The State contends that any error in the destruction or concealment of evidence jury instruction was harmless because the jury understood, under the circumstances, that the instruction referred to a change in appearance. While a customized instruction would have been preferable because of its specificity, the State argues it would not have been substantively different from a destruction or concealment of evidence instruction.

16

The State also contends that the instruction did not presuppose guilt or usurp the role of the jury. The instruction required the jury to first decide whether Petitioner destroyed or concealed evidence, and then whether such an act indicated consciousness of guilt. The State asserts that, under these circumstances, the jury understood that its first task was to determine whether Petitioner cut his hair, and only then, whether cutting his hair indicated consciousness of guilt. The State underscored this interpretation of the instructions in closing argument.

According to the State, the first sentence of the instruction, "You have heard [evidence] that the Defendant [] destroyed or concealed evidence[,]" was not an error, but rather an isolated remark read to the jury among a long litany of instructions without objection. The State did not repeat the remark. Apart from this particular remark, the circuit court repeatedly emphasized the proper role of the jury. The State also contends that Petitioner's argument concerning the use of "the defendant[,]" instead of "a defendant," in the instruction was unpreserved. Assuming, *arguendo*, that this Court reaches the issue, it was harmless because the jury would have understood that the instruction pertained to Petitioner regardless of the article used.

The State also disputes the relevance of the jury deliberations and notes. According to the State, the jury deliberated for three and a half to four hours following a six-day trial, which was "unremarkable." There was no *Allen* charge or notes reflecting an impasse. The jury notes never asked for clarification of destruction or concealment of evidence or asked about Petitioner's hair. Lastly, the State argues that any error associated with the

17

destruction or concealment of evidence jury instruction was harmless beyond a reasonable doubt when weighed against the totality of evidence.

## DISCUSSION

### *Standard of Review*

We review the decision of the circuit court to give a jury instruction for abuse of discretion. *Thompson*, 393 Md. at 311, 901 A.2d at 220. Pursuant to Md. Rule 4-325(c), a circuit court must give a requested jury instruction when "(1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given." *Ware v. State*, 348 Md. 19, 58, 702 A.2d 699, 718 (1997); *see also Cost v. State*, 417 Md. 360, 369, 10 A.3d 184, 189 (2010) (noting that when reviewing a jury instruction for abuse of discretion, the instructions "[m]ust be read together[.] . . .").

"A requested jury instruction is applicable if the evidence is sufficient to permit a jury to find its factual predicate." *Bazzle v. State*, 426 Md. 541, 550, 45 A.3d 166, 171 (2012). Sufficiency of evidence is a question of law for the circuit court, and on appellate review, this Court must independently determine whether the requesting party (*i.e.,* the State in this case) "produced [the] minimum threshold of evidence necessary to establish a *prima facie* case that would allow a jury to rationally conclude that the evidence supports the application of the legal theory desired." *Id.*, 45 A.3d at 171 (citation omitted). The requesting party must only produce "some evidence" to support the requested instruction,

18

and this Court views the facts in the light most favorable to the requesting party. *Dykes v. State*, 319 Md. 206, 216–17, 571 A.2d 1251, 1257 (1990).

*Analysis*

Evidence of a defendant's conduct following a crime may be admissible as circumstantial evidence of consciousness of guilt, but not when the conduct is too ambiguous or equivocal to indicate consciousness of guilt. *See Alberty v. United States*, 162 U.S. 499, 511, 16 S. Ct. 864, 868 (1896) (quoting Proverbs 28:1) ("Nor is it true as an accepted axiom of criminal law that 'the wicked flee when no man pursueth, but the righteous are as bold as a lion.'"). A wide range of post-crime conduct may be admissible as circumstantial evidence of consciousness of guilt, including the destruction or concealment of evidence. The objective of a consciousness of guilt jury instruction is to assist the jury to fulfill their role as factfinders by determining first, whether the post-crime behavior occurred, and second, whether the post-crime behavior was motivated by consciousness of guilt or other factors consistent with innocence. *See Dickey v. State*, 404 Md. 187, 197, 946 A.2d 444, 450 (2008) ("The main purpose of jury instructions is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict.") (quotation marks and citation omitted).

A. **Change of appearance may support a destruction or concealment of evidence jury instruction.**

Post-crime behavior, including destruction or concealment of evidence, is admissible as evidence of consciousness of guilt "because the particular behavior provides clues to the person's state of mind . . . . [A]s Professor Wigmore suggested, the commission

19

of a crime can be expected to leave some mental traces on the criminal." *Thomas v. State*, 372 Md. 342, 352, 812 A.2d 1050, 1056 (2002) (*Thomas I*) (citation omitted). Any type of post-crime behavior "should be admissible to prove guilt if [this Court] can say that the fact that the accused behaved in a particular way renders more probable the fact of their guilt. As is the nature of circumstantial evidence, the probative value of 'guilty behavior' depends upon the degree of confidence with which certain inferences may be drawn." *Id.*, 812 A.2d at 1056 (citations and quotation marks omitted).

Flight constitutes the archetypal example of admissible post-crime conduct. *Hickory v. United States*, 160 U.S. 408, 418, 420, 16 S. Ct. 327, 331–32 (1896) (citations omitted) ("By the common law, flight was considered so strong a presumption of guilt that in cases of treason and felony it carried the forfeiture of the party's goods, whether he were found guilty or acquitted[.] . . . In modern times more correct views have prevailed, and the evasion of or flight from justice seems now nearly reduced to its true place in the administration of the criminal law, namely, that of a circumstance[.] . . .").

In *Thomas I*, 372 Md. at 356, 812 A.2d at 1058, this Court adopted the four-prong test outlined by the United States Court of Appeals for the Fifth Circuit in *United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977), for assessing the probative value of evidence indicating consciousness of guilt. This four-part test became "the rubric for assessing the

propriety of jury instructions based on such evidence." *Thompson*, 393 Md. at 311, 901

A.2d at 220.[7]  As first adopted in the context of flight, the four-prong test requires:

1.  The behavior of the defendant suggests flight.

2.  The flight suggests a consciousness of guilt.

3.  The consciousness of guilt relates to the crime charged or closely related crime.

4.  The consciousness of guilt suggests actual guilt of the crime or closely related crime.

*See id.* at 312, 901 A.2d at 220 (noting that "a flight instruction should not be given unless the four inferences explicated in *Myers* reasonably may be drawn").

There must be at least "some evidence" to support each of the four inferences. *Dishman v. State*, 352 Md. 279, 292, 721 A.2d 699, 705 (1998); *Dykes*, 319 Md. at 216–17, 571 A.2d at 1257.  This is a low and "minimum" threshold. *Bazzle*, 426 Md. at 551, 45 A.3d at 171 (citation omitted); *Smith v. State*, 302 Md. 175, 183, 486 A.2d 196, 200 (1985) ("The instruction should be given in every case where there is sufficient evidence to take the issue to the jury.") (citations and quotation marks omitted).  This low evidentiary threshold may be satisfied by witness testimony. *Baublitz v. Henz*, 73 Md. App. 538, 547–48, 535 A.2d 497, 501 (1988) ("A litigant is only entitled to have his jury instruction presented to the jury where his instruction is a correct exposition of the law *and* there is

---

[7] Petitioner referred to the four-prong test for a consciousness of guilt jury instruction as the *Thompson* inferences in the questions presented.  We shall maintain the label "*Thompson* inferences" in this case for consistency.

*testimony in the case* to support it.") (citing *Levine v. Rendler*, 272 Md. 1, 13, 320 A.2d 258, 265 (1974)) (other citation omitted) (some emphasis added).

The four *Thompson* inferences are adaptable to different post-crime behaviors. This Court has recognized several different types of analogous post-crime behaviors in which these inferences may be applied to establish consciousness of guilt, including *change in appearance*. *Sorrell v. State*, 315 Md. 224, 228, 554 A.2d 352, 354 (1989) (observing that this analytical framework has been applied to "a broad spectrum of behavior occurring after the commission of a crime[, including] . . . flight from the scene or from one's usual haunts after the crime, assuming a false name, *shaving off a beard*, resisting arrest, attempting to bribe arresting officers, forfeiture of bond by failure to appear, escapes or attempted escapes from confinement, and attempts of the accused to take his [or her] own life.") (citation and quotation marks omitted) (emphasis added). Theoretically, as long as there is sufficient evidence to support the ultimate inference of actual guilt, any post-crime behavior could support a consciousness of guilt jury instruction.[8]

Destruction or concealment of evidence provides an analogous example of a post-crime behavior that may be admissible as circumstantial evidence of consciousness of guilt.

---

[8] Even if a jury instruction is supported by sufficient evidence, and complies with the other requirements of Md. Rule 4-325, a jury instruction cannot be too broad or invade the fact-finding role of the jury. In *Wright v. State*, this Court acknowledged that post-crime behavior, such as flight or providing a false name to conceal one's identity, may "constitute relevant evidence on the issue of consciousness of guilt[,]" and provided guidance in crafting a related jury instruction. 312 Md. 648, 655, 541 A.2d 988, 991 (1988). This Court noted that an "unqualified jury instruction," such as "'the assumption of a false name and its related conduct have *always* been deemed indicative of a consciousness of guilt' was too broad." *Id.* at 656, 541 A.2d at 992 (emphasis in original).

Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 409 (4th ed. 2010) ("Destruction of evidence permits, but does not require, an inference that the evidence would have been unfavorable to the position of the party who destroyed the evidence."). This Court has recognized the propriety of destruction or concealment of evidence jury instructions. *Cost*, 417 Md. at 371, 10 A.3d at 190–91; *Decker v. State*, 408 Md. 631, 640, 971 A.2d 268, 274 (2009).

Destruction or concealment of evidence may be demonstrated by a wide spectrum of behaviors. In *Thomas v. State*, 397 Md. 557, 576, 919 A.2d 49, 60 (2007) (*Thomas II*), this Court characterized the refusal to submit to blood testing as concealment of evidence. It could be inferred from the refusal of a blood test, a desire to conceal forensic evidence linking the defendant to a murder. *Id.* at 577, 919 A.2d at 61. Similar to *Thomas II,* it could be inferred from the cutting off of shoulder-length dreadlocks, a desire to conceal one's identity from law enforcement. We accordingly reject Petitioner's argument that the act of cutting one's hair may never constitute destruction or concealment of evidence.[9]

The four inferences necessary to generate a destruction or concealment of evidence instruction as adapted to the case at bar are the following:

1. The alteration of Petitioner's appearance, specifically the cutting of dreadlocks to a close crop, suggests a desire to conceal or destroy evidence.

---

[9] We recognize "destruction or concealment of evidence" may not be the most precise term in every case. *See Cost*, 417 Md. at 369–70, 10 A.3d at 190 ("As a preliminary matter, we find that Cost's proposed [destruction or concealment of evidence] instruction is most accurately labeled as a 'missing evidence' instruction."). The pattern jury instruction should be tailored in future cases to more accurately describe the defendant's post-crime conduct. *See infra* Part C.

2. The desire to conceal or destroy evidence suggests a consciousness of guilt.

3. The consciousness of guilt relates to the murder of Mr. Tibbs and closely related crimes.

4. The consciousness of guilt for murder and closely related crimes suggests actual guilt of the crimes.

Petitioner argues that there is insufficient evidence to support the first and second *Thompson* inferences. While cutting one's hair to destroy or conceal evidence has never come before this Court, other authorities—cited by this Court—have concluded that cutting one's hair following the commission of a crime may be admitted as evidence of consciousness of guilt. McCormick on Evidence, cited by this Court in *Thompson*, 393 Md. at 312, 901 A.2d at 220, and *Thomas I*, 372 Md. at 351, 812 A.2d at 1056, notes that "changing appearance" is similar to flight because it indicates a desire to avoid detection, and a desire to avoid detection indicates a consciousness of guilt. *See* 2 McCormick on Evid. § 263 (Robert P. Mosteller et al. eds., 8th ed. 2020). In *United States v. Jackson*, cited by this Court and McCormick, the Seventh Circuit explained that:

> [A]n innocent man is quite free to decide to fly, and to fly to South America the morning after a murder, but a jury is free to consider the decision to fly and the flight as some evidence of guilt. Similarly, an innocent man is free to change his appearance at any time, but a decision to change it . . . may be considered as *some evidence of guilt*.

476 F.2d 249, 252 (1973) (emphasis added); *see Andrews v. State*, 291 Md. 622, 630, 436 A.2d 1315, 1319 (1981) (citing *Jackson*). We agree with the reasoning of these authorities cited in our case law and find that there was sufficient evidence for the jury to infer that the act of cutting off dreadlocks suggested a desire to destroy or conceal an identifying

24

characteristic, which in turn, tended to establish Petitioner's consciousness of guilt for the murder of Mr. Tibbs.

Ms. Creighton testified that she heard and saw Petitioner arguing with Mr. Tibbs over money before the shooting. Minutes later, Ms. Creighton heard successive loud booms and saw Petitioner with his arm raised, standing over Mr. Tibbs.[10] Ms. Creighton then saw Petitioner look both ways down the street and flee. Ms. Creighton lived in the neighborhood and knew Petitioner was involved in the drug trade. Ms. Creighton also knew the appearance of Petitioner so well that she testified as to the exact outfits that he typically wore when on the street. Ms. Creighton testified that Petitioner wore shoulder-length dreadlocks at the time of the murder. This observation was corroborated by nearby surveillance video.

When Ms. Creighton saw Petitioner, approximately five weeks after the shooting, Petitioner had cut off his dreadlocks and wore a close-cropped haircut. This major change in hairstyle also coincided with Ms. Creighton's two brief glimpses of Petitioner in a five-week period despite Petitioner "*usually* [being] *around here all the time*." While Petitioner is technically correct that Ms. Creighton never said that Petitioner "disappeared[,]" it can be inferred from Ms. Creighton's testimony that before the murder, Petitioner regularly frequented the neighborhood with dreadlocks, but after the murder, Petitioner changed his appearance and was no longer regularly present. Ms. Creighton's testimony, corroborated in part by surveillance video and forensic evidence, overcomes the minimal threshold of

---

[10] The murder weapon, according to testimony from law enforcement, was small, low caliber, and easily concealable.

"some evidence" to establish the first *Thompson* inference that cutting off dreadlocks suggested a desire to conceal evidence.[11]

The evidence offered by the State—the testimony of Ms. Creighton, surveillance video, and forensic evidence establishing the desire to destroy or conceal evidence—does "double duty" as evidence to support the second *Thompson* inference—the desire to destroy or conceal evidence suggests consciousness of guilt. *Wright v. State*, 474 Md. 467, 491–92, 255 A.3d 73, 87 (2021).

After Petitioner shot Mr. Tibbs, Ms. Creighton watched Petitioner look up and down the street before fleeing the scene. The jury could infer this conduct signified consciousness of guilt from a desire to check the scene for any possible witnesses and quickly depart. Petitioner also fired all six bullets in the handgun, which caught the

---

[11] There remain other possible and innocent explanations for why Petitioner may have cut off his dreadlocks and generally avoided the neighborhood following the murder of Mr. Tibbs. Petitioner was entitled to highlight these innocent explanations during trial, and as explained in detail in Part C, *infra*, the jury was instructed by the circuit court to contemplate these innocent explanations when deciding whether (1) destruction or concealment of evidence occurred, and (2), if so, whether it suggested consciousness of guilt. The existence of other innocent explanations for post-crime conduct cannot prevent the circuit court from giving a jury instruction, so long as there is sufficient evidence to generate the instruction, and the other conditions of Md. Rule 4-325 are satisfied.

This Court reached a similar conclusion in *Thomas II*. Following a second trial, the petitioner in *Thomas II* argued that the first *Thompson* inference—the desire to conceal evidence—could not be established from a refusal to take a blood test because "numerous other factors could have explained his reluctance to submit to the [blood] testing[, including] . . . religious objections or fear of needles, the sight of blood, pain, or possible infection." This Court rejected the argument that the possibility of innocent or alternative explanations precludes the admissibility of evidence. *Thomas II*, 397 Md. at 577, 919 A.2d at 61. This Court concluded that the petitioner "had the opportunity at trial to offer alternative theories explaining his resistance to the blood test, and the record is completely devoid of any such evidence." *Id.* at 578, 919 A.2d at 62.

26

attention of Ms. Creighton as a series of loud booms. The jury could infer that Petitioner knew the gun shots and resulting injuries to Mr. Tibbs would draw public attention and a police investigation leading to an arrest. *See Haynes v. State*, 247 Md. App. 252, 294–95, 236 A.3d 680, 704 (2020) ("Although police had not yet arrived at the scene when [the defendant] drove away, the gunshot being fired in a public place undoubtedly would draw their attention."); *Page v. State*, 222 Md. App. 648, 670, 114 A.3d 283, 296 (2015) ("[A]lthough the police had not arrived when [the defendant] began running away, it would be fair to presume that authorities would be arriving to the scene shortly, given the number of gunshots fired in a public place."). Finally, and most importantly, Ms. Creighton's testimony that she spotted Petitioner with his shoulder-length dreadlocks completely cut off after a several-week hiatus from the neighborhood following the murder of Mr. Tibbs provided more evidence for the jury to infer a consciousness of guilt from the desire to destroy or conceal evidence.

The case at bar is distinguishable from *Harris v. State*, 458 Md. 370, 182 A.3d 821 (2018), a case cited by Petitioner, because the *Harris* Court found that there was not sufficient evidence to satisfy the "peculiarly available" condition to invoke the missing witness jury instruction, *id.* at 407, 182 A.3d at 843, whereas the record here provides sufficient evidence to satisfy the *Thompson* inferences. The "peculiarly available" condition of the missing witness instruction (along with three others not relevant in *Harris*) is analogous to the necessary *Thompson* inferences of a consciousness of guilt instruction, because in either case, a party must provide some evidence to satisfy all of the prerequisites to receive a jury instruction. In *Harris*, this Court concluded that the circuit court erred in

27

giving the missing person instruction because there was not adequate evidence to satisfy the "peculiarly available" condition of the missing witness jury instruction:

> the [c]ircuit [c]ourt made specific reference to Ms. Fallin and told the jury that, if she "was peculiarly within the power of [Mr. Harris] to produce" but was not called as a witness—*she was not*—and if her absence was "not sufficiently accounted for or explained"—*there was nothing before the jury as to why she was absent*—then the jury could "decide that [her] testimony . . . would have been unfavorable to [Mr. Harris]." *No direction was given to the jury as to how it should determine whether Ms. Fallin was "peculiarly within the power" of Mr. Harris.* "Unfavorable" in this context—where the jury was called upon to determine whether Mr. Harris was present at Ms. Binko's apartment on January 16, 2014—*could only mean* that Ms. Fallin would not back up Mr. Harris' testimony that he had spent that evening with Ms. Fallin.

*Id.* at 411, 182 A.3d at 845 (emphasis added).

In the case at bar, unlike the insufficient evidence for the missing person instruction in *Harris*, the State provided some evidence to support all four *Thompson* inferences: the eyewitness testimony of Ms. Creighton, forensic evidence, and surveillance video. If the State had not, then it would have been limited to making an argument relative to the change in appearance. *Id.* at 411–12, 182 A.3d at 846 ("[T]here are cases in which it may be appropriate for the prosecutor to ask the jury to draw a missing witness inference, even though the court should not endorse that particular inference in its instructions.").

Contrary to the assertion of Petitioner, there is no requirement in Maryland that the defendant be formally notified of his connection to the crime, either through statements of law enforcement, arrest, or imprisonment. The minimum showing to establish the *Thompson* inferences is that "[t]here must be an evidentiary basis, either direct or circumstantial, to connect a defendant's consciousness of guilt to the particular crime

28

charged in order to submit the evidence for jury consideration." *Thomas I,* 372 Md. at 355, 812 A.2d at 1057 (citations omitted). While Petitioner is correct that awareness of being suspected or charged of a crime "is important because the value of the conduct lies in the culprit's knowledge that he or she has committed the charged offense and in his or her fear of apprehension[,]" direct evidence of this awareness is not required to generate a jury instruction. *Id.*, 372 Md. at 354, 812 A.2d at 1057. The evidentiary basis connecting post-crime conduct to consciousness of guilt may be established by several factors, including but *not limited to* being charged or being a suspect in an investigation. *See generally* McCormick § 263 (listing factors including timing of the underlying crime, timing of the post-crime behavior, timing of criminal investigation or arrest, prior knowledge of the victim or location of the crime, and the presence of alternative explanations of post-crime conduct).

Evidence that Petitioner knew he was suspected by law enforcement of a crime strengthens the inference of consciousness of guilt, but it is not necessary to generate a jury instruction.[12] Assuming, *arguendo*, that it is necessary that Petitioner knew he was

---

[12] Other jurisdictions similarly do not require evidence that the defendant knew he was suspected of a crime to generate a consciousness of guilt jury instruction. *See, e.g.*, *Christian v. United States*, 394 A.2d 1, 32 n.84 (D.C. 1978) ("It is occasionally required by a Court that the accused should have been [a]ware that he [or she] was charged or suspected. *This is unnecessary*; it is the act of departure that is itself evidential; ignorance of the charge is merely a circumstance that tends to explain away the guilty significance of the conduct.") (citing 2 Wigmore on Evidence § 276(a) at 116 (3d ed. 1940)); *see also United States v. Williams*, 775 F.2d 1295, 1300 (5th Cir. 1985) (upholding a flight instruction despite no evidence that defendant was aware of a criminal investigation at the moment of flight); *United States v. Peltier*, 585 F.2d 314, 323 (8th Cir. 1978) (rejecting the argument that defendant must be charged with a crime or suspected thereof to support an inference of consciousness of guilt).

suspected by law enforcement of a crime, we agree with the reasoning of the Court of Special Appeals in *Page v. State*, 222 Md. App. 648, 655–56, 114 A.3d 283, 296 (2015), that found it "fair to presume" that a defendant would know he is wanted by law enforcement after committing a crime in public view.  In *Page*, the defendant shot the victim six times from point blank range following an argument over money.  *Id.* at 653–54, 114 A.3d at 286–87.  The murder occurred at 2:00 p.m. outside of a barbershop.  The defendant "ran in the other direction[]" before police arrived.  *Id.* at 655, 114 A.3d at 287.  The intermediate appellate court concluded that this evidence supported an inference of consciousness of guilt and an effort to avoid apprehension based on that guilt because the number of gun shots discharged in a public place would cause a police investigation into the identity of the shooter.  *Id.* at 671, 114 A.3d at 297.  This inference was further established by the defendant's subsequent attempts to avoid "the public eye[.]"  *Id.* at 670, 114 A.3d at 296.

Similar to the fair presumption that discharging six bullets during the day would generate a law enforcement manhunt in *Page*, Petitioner's discharge of six bullets during the day, in the view of at least one resident, at least two surveillance cameras, and possibly nearby corner store patrons, would support an inference that Petitioner knew he would be under suspicion from law enforcement.[13]  Testimony from Ms. Creighton also suggested,

---

[13] The cases cited by Petitioner to the contrary do not sway us because all of them are distinguishable on the basis of insufficient evidence.  In *Pickett v. State*, 222 Md. App. 322, 331, 112 A.3d 1078, 1083 (2015), the Court of Special Appeals held that "cutting your hair, alone" does not warrant a consciousness of guilt jury instruction.  Similarly, in *State v. Phillips*, 399 A.2d 315, 318 (N.J. Super. Ct. App. Div. 1979), the New Jersey appellate

(continued . . .)

similar to the defendant's attempt in *Page* to avoid "the public eye," that Petitioner avoided the area where Mr. Tibbs was murdered in the immediate aftermath of the shooting, despite previously inhabiting the same area "all the time."

We also reject Petitioner's argument that the post-crime behavior must be contemporaneous with the crime. This Court expressly denied that proposition in *Decker*: "The evidence need not be contemporaneous with the crime to be evidence of the defendant's consciousness of guilt." *Decker*, 408 Md. at 641, 971 A.2d at 274. Like awareness of being suspected of a crime, the timing of post-crime behavior is a factor to be considered when inferring consciousness of guilt. The length of time between the crime and post-crime behavior may also "be considered by the jury in weighing" the evidence. *Id.*, 971 A.2d at 274. In the case at bar, the five-week span between the time of the murder and Ms. Creighton calling 911 in which the haircut occurred was not too attenuated to be considered "contemporaneous." Evidence from Ms. Creighton established that the change in appearance occurred *at most* five weeks following the murder of Mr. Tibbs. Given the flight and relative disappearance of Petitioner following the shooting, it would have been impractical to provide a more definitive timeline.

---

(. . . continued)

court found that the evidence was too speculative to "be interpreted as self-inculpatory only by permitting the jury to speculate . . . as to defendant's motive in so conducting himself." *See also Commonwealth v. Holland*, 389 A.2d 1026, 1033 (Pa. 1978). It is precisely because there is *more evidence* of Petitioner's consciousness of guilt, besides a haircut, that distinguishes this case from those cited by Petitioner.

We conclude that changing one's appearance between the time of the crime and of the arrest, may constitute destruction or concealment of evidence, which may in turn support a corresponding destruction or concealment of evidence jury instruction as long as there is some evidence to support all four *Thompson* inferences connecting the change in appearance to actual guilt. In the case at bar, the circuit court did not abuse its discretion in giving a destruction or concealment of evidence jury instruction because the State presented sufficient evidence to support each of the four *Thompson* inferences.

**B.      The circuit court is not required to expressly state the four *Thompson* inferences on the record.**

Petitioner contends that, assuming that cutting one's hair may constitute destruction or concealment of evidence and may generate a corresponding jury instruction, the circuit court must expressly state on the record that the four *Thompson* inferences have been established "to allow for meaningful appellate review . . . [and] protect against the giving of unwarranted inference instructions[.]" Contrary to Petitioner's assertion, the circuit court is not required to state its reasoning for giving a consciousness of guilt jury instruction on the record because (1) circuit courts are presumed to know and apply the law correctly, and (2) Maryland appellate courts review jury instructions *de novo*, so "meaningful appellate review" is guaranteed.

Generally, circuit courts do not need to fully articulate their reasoning for decisions on the record, because each decision is presumed to correctly and faithfully apply the law. *Christian v. Maternal-Fetal Med. Assocs. of Md., LLC*, 459 Md. 1, 28, 183 A.3d 762, 778 (2018); *State v. Chaney*, 375 Md. 168, 179, 825 A.2d 452, 458 (2003); *Ball v. State*, 347

32

Md. 156, 206, 699 A.2d 1170, 1194 (1997).  "[T]rial judges are not oblig[ated] to spell out in words every thought and step of logic[.]"  *Beales v. State*, 329 Md. 263, 273, 619 A.2d 105, 110 (1993).  Unless a party provides a "reason to think otherwise[,]" the decision by the circuit court to provide a consciousness of guilt instruction is presumed to have considered the *Thompson* inferences and concluded that each inference is supported by some evidence in the record.  *Id.*, 619 A.2d at 110.

It is also unnecessary for the circuit court to articulate its reasoning on the record, because the Court of Special Appeals and this Court independently review whether there was sufficient evidence in the record to support the given jury instruction.  *General v. State*, 367 Md. 475, 487, 789 A.2d 102, 109 (2002).  There must be "some evidence" to support the jury instruction, and this Court determines whether there is "some evidence" in the light most favorable to the requesting party (*i.e.*, the State in this case).  *Dykes*, 319 Md. at 216–17, 571 A.2d at 1257.  Regardless of whether the circuit court articulated its reasoning or not on the record, appellate review ensures that jury instructions are sufficiently supported by evidence.  We conclude that the circuit court is not required to state the evidence supporting the four *Thompson* inferences on the record.  As we explained in Part A, *supra*, and upon independent review, we also find there was sufficient evidence to establish the four *Thompson* inferences in the case at bar.

## C.    Any error associated with the destruction or concealment of evidence jury instruction was harmless.

An error is harmless when this Court can find, beyond a reasonable doubt, that the error did not influence the verdict.  *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678

(1976). "To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed by the record." *Bellamy v. State*, 403 Md. 308, 332, 941 A.2d 1107, 1121 (2008) (citation omitted). "If the error is merely harmless [], then the judgment will stand." *Conyers v. State*, 354 Md. 132, 160, 729 A.2d 910, 925 (1999) (brackets removed and citations omitted).

After finding the destruction or concealment of evidence instruction harmless, the Court of Special Appeals commented "that it is preferable, in all cases in which a defendant has allegedly changed his appearance in order to avoid identification, to employ a custom instruction that focuses on the change of appearance as potential evidence of consciousness of guilt." *Rainey*, 252 Md. App. at 601, 260 A.3d at 724. A customized version of MPJI-CR 3:26 that specifically mentioned the change of appearance would have made the jury instruction more precise, but the Court of Special Appeals correctly noted that any potential prejudice from referring to the cutting of hair as "destruction or concealment of evidence" was harmless because the jury already understood that destruction or concealment of evidence meant the cutting of hair.

Counsel for the State emphasized the cutting of hair, not destruction or concealment of evidence, in its closing argument:

> I was never fortunate enough to have dredlocks [*sic*]. Very fortunate to have any hair left on the top of my head, but this doesn't happen overnight, okay. You don't wake up one morning and say, this month I'm going to wear my hair like this, and we don't abandon our personal experience and common sense just because we're sitting in this box. This takes time. So why is it right after the murder in June of 2017, it's all gone? That's what the lawyers call a consciousness of guilt.

34

> If I am the shooter and I'm sticking out on the street because I didn't cut my hair before and my dredlocks [*sic*] are waving all over the place and I killed somebody in the middle of the day on a sunny day in front of people, one of whom who [*sic*] is not part of whatever organization is going on at that grocery store, I need to change my appearance and I need to change it quick, and that is exactly what [Petitioner] did.

The State expressly connected the cutting of hair to consciousness of guilt and even avoided reiterating the phrase "destruction or concealment of evidence."

We agree with the Court of Special Appeals and conclude that the jury understood the cutting of dreadlocks was the subject of the pattern jury instruction for destruction or concealment of evidence. The State did not refer to the cutting of hair throughout the trial as destruction or concealment of evidence, and explained to the jury that the cutting of hair was the relevant act tending to establish consciousness of guilt.[14] The jury did not communicate any confusion regarding the instruction. By understanding the destruction or concealment of evidence instruction substantively referred to a change in appearance, the jury would have also understood the instruction from the circuit court was first to find whether Petitioner cut his dreadlocks, and second, to find whether the act indicated consciousness of guilt.[15]

---

[14] Maryland appellate courts strongly favor the use of pattern jury instructions. As the Court of Special Appeals noted, the preference for pattern jury instructions may have influenced the State to request or the circuit court to give a pattern jury instruction, rather than a custom instruction. *Rainey*, 252 Md. App. at 596, 260 A.3d at 711.

[15] Based on this understanding, and contrary to the assertion by Petitioner, the jury also would not have been confused about the definition of evidence as provided by MPJI-CR 3:00.

"This conclusion, however, is based on the particular facts in this case, and we do not hold that" a destruction or concealment of evidence jury instruction for change of appearance "would be []proper under different circumstances[.]" *Atkins v. State*, 421 Md. 434, 437–38, 26 A.3d 979, 980 (2011); *see also Appraicio v. State*, 431 Md. 42, 57, 63 A.3d 559, 608 (2013) ("Our holding here does not mean that this was the only response the [circuit] court could have given in this situation or that this response is the ideal one in every situation.") (footnote omitted). We invite the "Maryland Criminal Pattern Jury Instruction Committee to draft a model jury instruction regarding this [p]oint." *Atkins*, 421 Md. at 438 n.1, 26 A.3d at 980 n.1. The Committee should take into consideration the weight to be given to the evidence, the proper role of the jury to decide whether the evidence indicated consciousness of guilt, and the possibility of an innocent explanation for the conduct at issue.[16]

We also find harmless the statement by the circuit court that "You have heard [evidence] that the Defendant destroyed or concealed evidence[.]" According to Petitioner, this statement prejudiced the jury by suggesting that the defendant conclusively destroyed evidence. This argument is unpersuasive because the circuit court emphasized to the jury in the instruction that they "*must first decide whether the Defendant*[17] *destroyed or*

---

[16] For examples of change of appearance jury instructions held permissible in other jurisdictions, *see Jackson v. State*, 117 Nev. 116, 121, 17 P.3d 998, 1001 (2001); *United States v. Perkins*, 937 F.2d 1397, 1403 (9th Cir. 1991); *Commonwealth v. Carrion*, 407 Mass. 263, 277, 552 N.E.2d 558, 567 (1990); *United States v. McKinley*, 485 F.2d 1059, 1061 (D.C. Cir. 1973); *see also Rainey*, 252 Md. App. at 595 n.4, 260 A.3d at 721 n.4.

[17] Petitioner, citing *Wright*, argues that the phrase "the defendant" in the jury

(continued . . .)

*concealed evidence in this case*." (Emphasis added). The circuit court also cautioned the jury that even if they find that destruction or concealment of evidence occurred, they "*must decide whether that conduct shows a consciousness of guilt*." (Emphasis added). *See Wright*, 474 Md. at 494, 255 A.3d at 88 ("We are confident that the jury would consider the entire jury charge and employ its common sense to reach the conclusion that it should consider the relevance of [Petitioner's destruction or concealment of evidence] only if it first identified him as the person who [cut his hair].") (citation and quotation marks omitted).

An instruction to the jury carries the binding authority of the circuit court, but also works to prevent the jury from drawing erroneous inferences and conclusions. *Thompson*, 393 Md. at 307, 901 A.2d at 218 ("[T]he instruction does *not impermissibly* emphasize the importance of evidence . . . rather, it attempts to insure that the jury *does not imbue* [*the consciousness of guilt*] *evidence . . . with more weight than it deserves*.") (emphasis added).

_____

(. . . continued)

instruction presupposed guilt because it could have "somehow enhanced the identification of . . . [Petitioner]." 474 Md. at 492, 255 A.3d at 87. The State contends that this argument was unpreserved because it was not raised before the circuit court. Petitioner did not specifically mention *Wright* during trial (which was published approximately two years later), but did object to the destruction or concealment of evidence jury instruction presupposing the identity of Petitioner: "we are, by giving this instruction, deciding for the jury already that that is [Petitioner] with the dre[a]ds on that day."

Assuming, *arguendo*, that we find this argument preserved, the phrase "the defendant" did not unfairly prejudice Petitioner because the jury would have "employ[ed] its common sense to reach the conclusion that it should consider the relevance of [Petitioner's change of appearance] only if it first identified him as the person who [changed appearance]." *Id.* at 494, 255 A.3d at 88 (citation omitted).

37

When analyzing the propriety of a jury instruction under the abuse of discretion standard, this Court must assess the alleged error in context with the entire jury instruction. *Nora Cloney & Co. v. Pistorio*, 251 Md. 511, 515, 248 A.2d 94, 96 (1968) ("This Court will not condemn a charge because of the way in which it is expressed or because an isolated part of it does not seem to do justice to one side or the other."); *Dorsey Bros., Inc. v. Anderson*, 264 Md. 446, 451, 287 A.2d 270, 273 (1972) (declining to read one circuit court remark out of context of the total jury instruction). The destruction or concealment of evidence jury instruction was one statement among a comprehensive jury instruction that spanned dozens of pages in the trial transcript and lasted approximately thirty minutes. Among the several instructions, the circuit court cautioned the jury that they must "examine the identification of the Defendant with great care. It is for you to determine the reliability of any identification and give it the weight you believe it deserves."

Finally, we note that any error associated with the jury instruction was unimportant in comparison to everything else the jury heard on the issue. The jury only deliberated for a few hours following a six-day trial. There was no need for an *Allen*-style charge imploring the jury to reach a consensus. The jury submitted several notes of clarification, but contrary to the assertion of Petitioner, the jury did *not* ask about the cutting of hair or an explanation of consciousness of guilt. The jury asked, "How much does R. Rainey, Defendant, weigh now? How much did R. Rainey weigh in June 2017? How tall is Mr. R. Rainey?"

The semantic difference between destruction or concealment of evidence and cutting hair, when compared to everything else presented to the jury, was not important.

38

The State presented twelve witnesses, multiple exhibits including surveillance video, body camera footage, pictures, and forensic and DNA evidence. The jury also heard the testimony of an eye-witness willing to testify in open court despite fear of reprisal. *See Booker v. State*, 225 Md. 183, 185, 170 A.2d 203, 203 (1961) ("[I]dentification by a single eyewitness, if believed, is sufficient to support a conviction.") (citations omitted). We conclude that any error associated with the circuit court's destruction or concealment of evidence instruction was harmless.

## CONCLUSION

Cutting one's hair, like fleeing from a crime-scene or adopting a false name, may be admissible as evidence of consciousness of guilt as long as there is some evidence to support all four *Thompson* inferences connecting the change in appearance to actual guilt. These same inferences are used to assess the sufficiency of evidence needed to give a consciousness of guilt jury instruction. It is presumed that the circuit court will find sufficient evidence to support all four *Thompson* inferences before propounding a consciousness of guilt jury instruction. In the case at bar, there was some evidence to support all four *Thompson* inferences connecting the act of cutting off dreadlocks to actual guilt of murder because of eyewitness testimony that established the defendant wore dreadlocks at the time of the murder and regularly appeared in the area, but following the murder, had closely cut his hair and was only seen twice in the area by the eyewitness in a five-week period.

While it would have been more precise for the circuit court to have tailored the consciousness of guilt instruction to specifically describe a change in appearance instead

39

of a destruction or concealment of evidence, any error associated with the nomenclature of the given instruction was harmless beyond a reasonable doubt because the jury understood that the instruction referred to the act of cutting dreadlocks. We encourage the Maryland Criminal Pattern Jury Instruction Committee to draft a model jury instruction regarding this point.

For the reasons previously explained, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

40